**Hearing Date:  August 28, 2013 at 11:00 a.m. (prevailing Eastern time)**
**Objection Deadline:  August 19, 2013 at 4:00 p.m. (prevailing Eastern time)**

Matthew A. Feldman
Paul V. Shalhoub
Robin Spigel
Andrew D. Sorkin
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| K-V Discovery Solutions, Inc., et al.,[1] | : | Case No. 12-13346 (ALG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------x

## NOTICE OF FILING OF AMENDED FORM OF PROPOSED ORDER CONFIRMING SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR K-V DISCOVERY SOLUTIONS, INC. AND ITS AFFILIATED DEBTORS

PLEASE TAKE NOTICE that, on July 19, 2013, the above-captioned debtors and

debtors in possession (the "**Debtors**") filed the proposed Sixth Amended Joint Chapter 11 Plan of

Reorganization for K-V Discovery Solutions, Inc. and Its Affiliated Debtors (as amended, modified

and/or supplemented from time to time, the "**Plan**").[2]

PLEASE TAKE FURTHER NOTICE that a hearing to consider confirmation of the Plan

(the "**Confirmation Hearing**") is scheduled to commence before the Honorable Allan L. Gropper,

United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) K-V
        Discovery Solutions, Inc. (7982); (ii) DrugTech Corporation (3690); (iii) FP1096, Inc. (3119); (iv) K-V
        Generic Pharmaceuticals, Inc. (7844); (v) K-V Pharmaceutical Company (8919); (vi) K-V Solutions USA, Inc.
        (4772); (vii) Ther-Rx Corporation (3624); and (viii) Zeratech Technologies USA, Inc. (6911).  The Debtors'
        executive headquarters are located at 16640 Chesterfield Grove Road, Suite 200, Chesterfield, MO 63005.

[2]

(the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004 on August 28, 2013 at

11:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard.

       PLEASE TAKE FURTHER NOTICE that on August 26, 2013, the Debtors filed a

proposed form of Confirmation Order [Docket No. 1068] (the "**Initial Proposed Confirmation**

**Order**").

       PLEASE TAKE FURTHER NOTICE that annexed hereto as <u>Exhibit A</u> is an amended

proposed form of order confirming the Plan (the "**Amended Proposed Confirmation Order**").  A

blackline of the Amended Proposed Confirmation Order against the Initial Proposed Confirmation Order

(excluding exhibits) is annexed hereto as <u>Exhibit B</u>.  The Debtors will request that the Bankruptcy Court

enter the Amended Proposed Confirmation Order at the Confirmation Hearing.

       PLEASE TAKE FURTHER NOTICE that the Debtors reserve the right to make changes

to the Amended Proposed Confirmation Order before and/or at the Confirmation Hearing and as may

otherwise be directed by the Bankruptcy Court.  Any order entered by the Bankruptcy Court confirming

the Plan may differ from the Amended Proposed Confirmation Order.

Dated:  New York, New York
       August 27, 2013

                WILLKIE FARR & GALLAGHER LLP
                *Counsel for the Debtors and*
                *Debtors in Possession*

                By:  /s/ Matthew A. Feldman           
                  Matthew A. Feldman
                  Paul V. Shalhoub
                  Robin Spigel
                  Andrew D. Sorkin

                787 Seventh Avenue
                New York, New York  10019
                (212) 728-8000

## EXHIBIT A

**Amended Proposed Confirmation Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| K-V Discovery Solutions, Inc., <u>et al.</u>,[1] | : | Case No. 12-13346 (ALG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------x

**ORDER CONFIRMING SIXTH AMENDED JOINT
CHAPTER 11 PLAN OF REORGANIZATION FOR
<u>K-V DISCOVERY SOLUTIONS, INC. AND ITS AFFILIATED DEBTORS</u>**

Upon the Sixth Amended Joint Chapter 11 Plan of Reorganization for K-V

Discovery Solutions and Its Affiliated Debtors, dated July 17, 2013 [Docket No. 1002] (as

modified from time to time, including the Plan Supplement, the "**<u>Plan</u>**");[2] and upon the

Disclosure Statement for Sixth Amended Joint Chapter 11 Plan of Reorganization for K-V

Discovery Solutions and Its Affiliated Debtors, dated July 17, 2013 [Docket No. 1003] (the

"**<u>Disclosure Statement</u>**"); and upon the July 16, 2013 hearing to approve the Disclosure

Statement (the "**<u>Disclosure Statement Hearing</u>**"); and upon that certain Order: (I) Approving

Disclosure Statement; (II) Establishing Date of Confirmation Hearing; (III) Establishing

Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including

(A) Approving Form and Manner of Solicitation Packages, (B) Approving Form and Manner of

Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures

for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) K-V Discovery Solutions, Inc. (7982); (ii) DrugTech Corporation (3690); (iii) FP1096, Inc. (3119); (iv) K-V Generic Pharmaceuticals, Inc. (7844); (v) K-V Pharmaceutical Company (8919); (vi) K-V Solutions USA, Inc. (4772); (vii) Ther-Rx Corporation (3624); and (viii) Zeratech Technologies USA, Inc. (6911). The Debtors' executive headquarters are located at 16640 Chesterfield Grove, Suite 200, Chesterfield, MO 63005.

[2]     Capitalized terms used but not defined herein have the meanings assigned them in the Plan. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Order.

Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations;

(IV) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan;

(V) Approving Rights Offering Procedures; and (VI) Granting Related Relief [Docket No. 995],

entered on July 17, 2013 (the "**Disclosure Statement Order**"); and upon the declarations,

certifications and related supplements of Jane Sullivan of Epiq Bankruptcy Solutions, LLC,

Thomas S. McHugh, Treasurer and Vice President or Chief Financial Officer of the Debtors, and

Leon Szlezinger of Jefferies LLC, the Debtors' investment banker and financial advisor; and

upon the (i) affidavits, declarations and exhibits admitted into evidence at the hearing

commenced on August 28, 2013, to consider confirmation of the Plan (the "**Confirmation**

**Hearing**"), (ii) arguments of counsel presented at the Confirmation Hearing, (iii) objections filed

with respect to confirmation of the Plan by the Public Pension Fund Group, as lead plaintiff in

the PPFG Securities Litigation [Docket No. 1056] and certain member companies of American

International Group, Inc. [Docket No. 1057], and the reservation of rights filed by Lori

Anderson, as lead plaintiff in the 2011 Securities Litigation [Docket No. 1055] (collectively, the

"**Objections**") and other informal comments received by the Debtors, (iv) the Debtors'

memorandum of law filed in support of confirmation and in reply to the Objections, and (v) other

pleadings filed in support of confirmation of the Plan; and upon the Court having taken judicial

notice of the docket of the Debtors' Reorganization Cases maintained by the Clerk of the Court

and/or its duly appointed agent, and all pleadings and other documents filed, all orders entered,

and evidence and arguments made, proffered or adduced at, and the hearings held before the

Court during the pendency of these Reorganization Cases, including the Order Setting Bar Dates

to File Proofs of Claim [Docket No. 288], entered on October 19, 2012; and the Court having

found that due and proper notice has been given with respect to the Confirmation Hearing and

the deadlines and procedures for filing objections to the Plan; and the appearance of all interested

parties having been duly noted in the record of the Confirmation Hearing; and upon the record of

the Confirmation Hearing and these Reorganization Cases, and after due deliberation thereon,

and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT:**

**<u>JURISDICTION AND VENUE</u>**

A.       The Court has jurisdiction over this matter and these Reorganization Cases

pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409.

B.       Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b), and this Court has exclusive jurisdiction to determine whether the Plan should be

confirmed under the applicable provisions of chapter 11 of title 11 of the United States Code (the

"**<u>Bankruptcy Code</u>**").

C.       Each of the conditions precedent to the entry of this Order has been

satisfied in accordance with Section 11.1 of the Plan or properly waived in accordance with

Section 11.3 of the Plan.

**STANDARDS FOR CONFIRMATION**
**<u>UNDER SECTION 1129 OF THE BANKRUPTCY CODE</u>**

D.       <u>Section 1129(a)(1)</u>.  The Plan complies with each applicable provision of

the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122

and 1123 of the Bankruptcy Code as follows:

> 1.       In accordance with section 1122(a) of the Bankruptcy Code,
> Section 4.1 of the Plan classifies each Claim against and Interest in
> the Debtors into a Class containing only substantially similar
> Claims or Interests;

2.      In accordance with section 1123(a)(1) of the Bankruptcy Code,
Section 4.1 of the Plan properly classifies all Claims and Interests
that require classification;

3.      In accordance with section 1123(a)(2) of the Bankruptcy Code,
Section 4.2 of the Plan properly specifies each Class of Claims that
is not impaired under the Plan;

4.      In accordance with section 1123(a)(3) of the Bankruptcy Code,
Sections 5.3 through 5.10 of the Plan properly specify the
treatment of each Class of Claims or Interests that is impaired
under the Plan;

5.      In accordance with section 1123(a)(4) of the Bankruptcy Code, the
Plan provides the same treatment for each Claim or Interest of a
particular Class unless the holder of such a Claim or Interest agrees
to less favorable treatment;

6.      In accordance with section 1123(a)(5) of the Bankruptcy Code, the
Plan provides adequate means for its implementation, including the
provisions regarding Effective Date transactions and transfers, the
post-Effective Date corporate management, governance and
actions set forth in Article VII of the Plan, and the funding for the
Plan, including from the proceeds of the Rights Offering and the
proceeds from the sale of the Direct Purchase Shares;

7.      In accordance with section 1123(a)(6) of the Bankruptcy Code,
Reorganized KV's amended certificate of incorporation contains
provisions prohibiting the issuance of non-voting equity securities
and providing for the appropriate distribution of voting power
among all classes of equity securities authorized for issuance;

8.      In accordance with section 1123(a)(7) of the Bankruptcy Code, the
provisions of the Plan and the Reorganized Debtors' amended
certificates of incorporation and bylaws regarding the manner of
selection of officers and directors of the Reorganized Debtors,
including the provisions of Section 7.5 of the Plan, are consistent
with the interests of creditors and equity security holders and with
public policy;

9.      In accordance with section 1123(b)(1) of the Bankruptcy Code,
Article V of the Plan impairs or leaves unimpaired, as the case may
be, each Class of Claims and Interests;

10.     In accordance with section 1123(b)(2) of the Bankruptcy Code,
Article X of the Plan provides for the assumption or rejection of
the Debtors' executory contracts and unexpired leases that have

not been previously assumed or rejected pursuant to section 365 of
the Bankruptcy Code and orders of the Court;

11.     Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the
        Plan incorporates the settlement or adjustment of claims or
        interests belonging to the Debtors and their estates.  The Plan
        incorporates several settlements by and among one or more of the
        Debtors and one or more third parties, including, (i) the Stipulation
        of Settlement and Dismissal (as defined below), and (ii) the global
        settlement among the Debtors, the Creditors' Committee, the
        holders of approximately 99% in dollar amount of the Class 3
        Senior Secured Notes Claims, and the holders of approximately
        97% in dollar amount of Class 6 Convertible Subordinated Notes
        Claims.  In accordance with Bankruptcy Rule 9019, such
        settlements are fair and equitable and in the best interests of the
        Debtors and creditors;

12.     In accordance with section 1123(b)(3)(B) of the Bankruptcy Code,
        Section 12.11 of the Plan provides that the Reorganized Debtors
        will retain and may enforce any claims, demands, rights, defenses
        and causes of action that any Debtor may hold against any entity,
        to the extent not expressly released under the Plan;

13.     In accordance with section 1123(b)(5) of the Bankruptcy Code,
        Article V of the Plan modifies or leaves unaffected, as the case
        may be, the rights of holders of Claims in each Class;

14.     In accordance with section 1123(b)(6) of the Bankruptcy Code, the
        Plan includes additional appropriate provisions that are not
        inconsistent with applicable provisions of the Bankruptcy Code;
        and

15.     In accordance with section 1123(d) of the Bankruptcy Code,
        Section 10.3 of the Plan provides for the satisfaction of Claims
        related to Cure Amounts associated with each executory contract
        and unexpired lease to be assumed pursuant to the Plan in
        accordance with section 365(b)(1) of the Bankruptcy Code.  All
        Claims related to Cure Amounts will be determined in accordance
        with the underlying agreements and applicable law.

E.      Section 1129(a)(2).  The Debtors have complied with all applicable

provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or

rejections thereof.  In particular, the Plan complies with the requirements of sections 1125 and

1126 of the Bankruptcy Code as follows:

1.      All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York (collectively, the "**Bankruptcy Rules**"), and have had an opportunity to appear and be heard with respect thereto.

2.      The Debtors, the Creditors' Committee, and the Investor Parties, and their respective representatives, solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order. Accordingly, the Debtors, the Creditors' Committee, and the Investor Parties, and their respective representatives, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. Pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Creditors' Committee, the Investor Parties, the Participating Ad Hoc Group, Varana, Telemetry and the members of the Ad Hoc Senior Secured Noteholders Group (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under the Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

3.      Written notice of the Confirmation Hearing and the relevant deadlines for the submission of ballots and objections to confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the Disclosure Statement Order. Such written notice is adequate and sufficient.

4.      Claims in Classes 1 and 2 under the Plan are unimpaired, and such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.      All Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order were given the opportunity to vote on the Plan

(i.e., Classes 3, 4, 5, 6 and 7).  Ballots were received from holders of Claims in all such Classes, except for Class 4 (with respect to KV), and Class 7 (with respect to K-V Generic Pharmaceuticals, Inc.) (such Classes, collectively, the "**Deemed Accepting Classes**"), which Classes are deemed to accept the Plan pursuant to paragraph 18(j) of the Disclosure Statement Order.

6.    The Debtors have made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 3, 4, 5, 6 and 7 under the Plan.  No holder of Claims in the Deemed Accepting Classes returned a Ballot accepting or rejecting the Plan.

7.    Each of Classes 3, 5, 6 and 7 having holders of Claims entitled to vote on the Plan (except with respect to General Unsecured Claims against KV) have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in such Classes. actually voting.  In accordance with paragraph 18(j) of the Disclosure Statement Order, as no holder of Claims in the Deemed Accepting Classes voted to accept or reject the Plan, such Classes are deemed to have accepted the Plan.

F.    Section 1129(a)(3).  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances in these Reorganization Cases.  The Plan is the result of extensive, good faith, arm's length negotiations between the Debtors and certain of their principal constituencies (including holders of approximately 99% of the principal amount of the Senior Secured Notes Claims and holders of approximately 97% of the principal amount of Convertible Subordinated Notes Claims, the Creditors' Committee, and each of their respective representatives), reflects substantial input from the principal constituencies having an interest in these cases, and achieves the goal of consensual reorganization contemplated by the Bankruptcy Code.

G.    Section 1129(a)(4).  Any payment made or to be made by the Debtors for services or for costs and expenses in, or in connection with, the Reorganization Cases, or in connection with the Plan and incident to the Reorganization Cases, has been approved by, or is

subject to the approval of, this Court as reasonable, satisfying the requirements of section

1129(a)(4) of the Bankruptcy Code.  Pursuant to Section 3.3 of the Plan, and except as otherwise

provided herein, all payments to be made to Professional Persons or other entities asserting a Fee

Claim for services rendered before the Effective Date will be subject to review and approval by

this Court.

        H.      Section 1129(a)(5).  To the extent known, the Debtors have disclosed the

identity and affiliations of the individuals proposed to serve, after confirmation of the Plan, as

directors and officers of the Reorganized Debtors; the appointment to, or continuance in, such

offices of such individuals is consistent with the interests of the Debtors' creditors and interest

holders and with public policy; and the Debtors have disclosed the identity of any insiders who

will be employed or retained by the Reorganized Debtors subsequent to confirmation of the Plan

and the nature of any compensation to be paid to such insiders.  These disclosures satisfy the

requirements of section 1129(a)(5) of the Bankruptcy Code.

        I.      Section 1129(a)(6).  The Plan does not provide for any changes in rates

that require regulatory approval of any governmental agency.

        J.      Section 1129(a)(7).  Each holder of an impaired Claim or Interest in each

impaired Class of Claims or Interests that has not accepted the Plan will, on account of such

Claim or Interest, receive or retain property under the Plan having a value, as of the Effective

Date, that is not less than the amount that such holder would have received or retained if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  See

Disclosure Statement, Exhibit 2.

        K.      Section 1129(a)(8).  With respect to each Class of Claims or Interests

designated by the Plan, other than (i) Classes that do not have a holder of an Allowed Claim or

Allowed Interest and are deemed eliminated from the Plan for the purposes of section 1129(a)(8)

of the Bankruptcy Code pursuant to paragraph 19 of the Disclosure Statement Order, and

(ii) Classes 7 (solely with respect to General Unsecured Claims against KV), 8(a) (Existing

Securities Law Claims), 8(b) (Equitably Subordinated Claims) and 9 (Existing KV Interests)

either:  (a) such Class has accepted the Plan; or (b) such Class is not Impaired under the Plan.

Holders of General Unsecured Claims against KV in Class 7 have rejected the Plan because the

Plan was not accepted by the holders of at least two-thirds in amount of such Claims.  The

holders of Claims in Classes 8(a), 8(b) and 9 are deemed to have rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code.  Nevertheless, the Plan is confirmable because it

satisfies section 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting Classes

of Claims and Interests.

       L.      Section 1129(a)(9).  Except to the extent that the holder of a particular

Claim has agreed to different treatment, the Plan provides treatment for Administrative Expense

Claims, Priority Tax Claims, Fee Claims and Priority Non-Tax Claims that is consistent with the

requirements of section 1129(a)(9) of the Bankruptcy Code.

       M.      Section 1129(a)(10).  The Plan has been accepted by Classes 3, 5, 6, and 7

(except with respect to General Unsecured Claims against KV), which are all Classes of

impaired Claims that are entitled to vote on the Plan, determined without including any

acceptance of the Plan by any insider.  In accordance with paragraph 18(j) of the Disclosure

Statement Order, as no holder of Claims in Class 4 voted to accept or reject the Plan, such Class

is deemed to have accepted the Plan.

       N.      Section 1129(a)(11).  The Debtors' projections of financial information of

the Reorganized Debtors as of the Effective Date are reasonable and made in good faith, and

confirmation of the Plan is not likely to be followed by the liquidation or the need for the further financial reorganization of the Debtors.

O.    Section 1129(a)(12).  The Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, due and payable through the Effective Date shall be paid by the Debtors on or before the Effective Date and amounts due thereafter shall be paid by the Reorganized Debtors in the ordinary course until the entry of a final decree closing the Reorganization Cases, or the conversion or dismissal of the Reorganization Cases.

P.    Section 1129(a)(13).  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtor had obligated itself to provide such benefits.

Q.    Sections 1129(a)(14), 1129(a)(15) and 1129 (a)(16).  Sections 1129(a)(14), 1129(a)15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Reorganization Cases.

R.    Section 1129(b).  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 7 (with respect to General Unsecured Claims against KV), 8(a), 8(b) and 9, i.e., the Classes that are impaired and rejected (or are deemed to reject) the Plan. The Plan does not discriminate unfairly with respect to Class 7 (with respect to General Unsecured Claims against KV) because the holders of General Unsecured Claims against KV are receiving the same or more favorable treatment as holders of all similarly situated unsecured Claims against KV.

S.      The Plan does not discriminate unfairly with respect to Classes 8(a), 8(b) or 9 because the Claims and Interests in such Classes either are subordinated to other Claims or have no value.  The Plan is "fair and equitable" with respect to each rejecting Class because no Class senior to each such rejecting Class is being paid more than in full and the Plan does not provide a recovery on account of any Claim or Interest that is junior to Classes 7, 8(a), 8(b) or 9.

T.      Section 1129(c).  The Plan is the only plan that has been filed in these cases that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

U.      Section 1129(d).  No party in interest, including any governmental unit (as defined in section 101(27) of the Bankruptcy Code), has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933; the principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## DISCHARGE, INDEMNIFICATION, INJUNCTIONS, RELEASES AND EXCULPATION

V.      The indemnification, injunction, discharge, release and exculpation provisions set forth in Article XII of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and are in the best interests of the Debtors and their Estates, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of the Reorganization Cases in accordance with the Plan.  The failure to effect the discharge, release, indemnification, injunction and exculpation provisions described in Article XII of the Plan would seriously impair

the Debtors' ability to confirm the Plan.  Each of the discharge, release, indemnification,

injunction and exculpation provisions set forth in the Plan:

      (i)      is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b) and (d);

      (ii)      is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

      (iii)      is an integral element of the settlements and transactions incorporated into the Plan;

      (iv)      confers material benefit on, and is in the best interests of, the Debtors and their estates;

      (v)      is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Reorganization Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and

      (vi)      is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and applicable law.

      W.      <u>Termination of Subordination Rights and Settlement of Related Claims</u>.

Except as provided in the Plan, the classification of and manner of all Claims and Interests and

the respective distributions, treatments and other provisions under the Plan take into account or

conform to the relative priority and rights of the Claims and Interests in each Class in connection

with any contractual, legal and equitable subordination rights relating thereto whether arising

under general principles of equitable subordination, sections 510(a) and 510(b) of the

Bankruptcy Code and any and all such rights are settled, compromised and released pursuant to

the Plan.

## <u>HERMELIN CLAIMS</u>

      X.      As a result of the withdrawal of the proof of claim filed by Mr. Marc S.

Hermelin, assigned claim number 151 by the Debtors' claims agent, there are no claims in Class

8(b) (Equitably Subordinated Claims).

**NOW, THEREFORE, IT IS HEREBY ORDERED,
ADJUDGED AND DECREED, that:**

1.       The findings of this Court as set forth herein shall constitute findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter by

virtue of Bankruptcy Rule 9014.  To the extent any findings of fact constitute conclusions of law,

they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they

are adopted as such.

2.       The Plan is confirmed pursuant to section 1129 of the Bankruptcy Code;

provided, however, that if there is any conflict between the terms of the Plan and the terms of

this Order, the terms of this Order shall control.

3.       The Effective Date of the Plan shall occur on the first Business Day on

which all conditions set forth in Section 11.2 of the Plan have been satisfied or waived in

accordance with Section 11.3 of the Plan.

4.       Any objections or responses to confirmation of the Plan and any

reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior

to the entry of this Order or (b) are not cured by the relief granted herein, are overruled in their

entirety and on their merits, and all withdrawn objections or responses are deemed withdrawn

with prejudice.

5.       The business and assets of the Debtors shall remain subject to the

jurisdiction of this Court until the Effective Date.

6.       On and after the Effective Date, the Reorganized Debtors may operate

their businesses and may use, acquire and dispose of property and prosecute, compromise or

settle any Claims (including any Administrative Expense Claims) and Causes of Action without

supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the

- 13 -

Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan

or this Order. Without limiting the foregoing, the Reorganized Debtors may pay the charges that

they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses

or related support services without application to the Bankruptcy Court.

       7.     The Plan provides for the comprehensive settlement of Claims and

controversies against the Debtors, including the settlement of the ETHEX Criminal Fine Claims

and the Qui Tam Claims. The negotiations of such settlements were conducted in good faith and

at arms' length, and each such settlement is of benefit to the Debtors' estates and represents a

fair, necessary and reasonable compromise of the Claims held by the holders thereof. The terms

and conditions of each such compromise and settlement are therefore an integral part of the Plan.

Further, the settlements represent a compromise between and among the Debtors and their

creditors of all claims against, interests in, and litigation pending or threatened against the

Debtors, or that was or could have been commenced against the Debtors prior to the date of entry

of this Order. The settlements, as reflected in the relative distributions and recoveries of holders

of Claims and Interests under the Plan, are fair and reasonable and accordingly are approved

pursuant to Bankruptcy Rule 9019(a). The Settlements will save the Debtors and their estate the

costs and expenses of prosecuting various disputes, the outcome of which would likely consume

substantial resources of the Debtors' estates and require substantial time to adjudicate. The

settlements also have facilitated the creation and implementation of the Plan and benefit the

estates and the Debtors' creditors.

## A.    Plan Implementation

       8.     In accordance with section 1142 of the Bankruptcy Code, section 303 of

the Delaware General Corporation Law and any comparable provisions of the business

corporation law of any other state (collectively, the "**Reorganization Effectuation Statutes**"),

but subject to the satisfaction or waiver of all conditions precedent listed in Section 11.2 of the

Plan (unless waived in accordance with section 11.3 of the Plan), without further action by the

Court or the boards of directors or managers or security holders of any Debtor or Reorganized

Debtor, the Debtors and the Reorganized Debtors are authorized to:  (a) take any and all actions

necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the

transactions contemplated thereby or hereby, including those transactions identified in Article

VII of the Plan; and (b) execute, deliver, file and record such documents (including the Plan

Documents), contracts, instruments, releases and other agreements and take such other action as

may be necessary to effectuate and further evidence the terms and conditions of the Plan.

9.      This Order shall constitute all approvals and consents required, if any, by

the laws, rules or regulations of any state or any other governmental authority with respect to the

implementation or consummation of the Plan and any other acts that may be necessary or

appropriate for the implementation or consummation of the Plan.

10.     Each federal, state, commonwealth, local, foreign or other governmental

agency is hereby directed and authorized to accept for filing and/or recording any and all

documents, mortgages and instruments necessary or appropriate to effectuate, implement or

consummate the transactions contemplated by the Plan and this Order.

11.     The consummation of the Plan, including the assumption of any executory

contract or unexpired lease by a Reorganized Debtor, shall not constitute a change in ownership

or change in control under any employee benefit plan or program, financial instrument, loan or

financing agreement, executory contract or unexpired lease or contract, lease or agreement in

existence on the Effective Date to which any Debtor is a party.

**B.**     **Executory Contracts and Unexpired Leases**

12.     Subject to the occurrence of the Effective Date, the Debtors are authorized to assume and/or reject executory contracts or unexpired leases in accordance with Article X of the Plan and orders of this Court.  Each executory contract and unexpired lease assumed pursuant to Section 10.1 of the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

13.     As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases identified on the Schedule of Assumed Contracts and Leases shall be deemed assumed, and all other executory contracts and unexpired leases of the Debtors shall be deemed rejected, except that: (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; and (b) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as is determined by a Final Order of the Bankruptcy Court resolving such motion.

14.     The amended and restated employment agreements between KV and each of Gregory J. Divis, Thomas S. McHugh, and Patrick J. Christmas, substantially final forms of which are annexed to the Plan Supplement as Exhibit 5, shall be deemed assumed by the Reorganized Debtors upon the occurrence of the Effective Date pursuant to section 10.5 of the Plan.

15.     All Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as General Unsecured Claims.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is timely filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors on or before the date that is thirty (30) days after the effective date of such rejection (which may be the Effective Date, the date on which the Debtors reject the applicable contract or lease as provided in Section 10.3(c) of the Plan, or pursuant to an order of the Bankruptcy Court).  Unless previously provided by the Debtors, the Debtors shall provide notice, as set forth in the Confirmation Notice (as defined in paragraph 34 below), of the last date to file a Claim arising from the rejection of an executory contract or unexpired lease to the counterparties of such rejected contracts and leases.

## C.     Vesting and Transfer of Assets

16.     On the Effective Date, except as otherwise provided herein or in the Plan, all property of the Estates of the Debtors, including all claims, rights and Causes of Action and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests.

## D.     No Relinquishment of Rights

17.     Except as provided in sections 12.7 and 14.5 of the Plan, nothing contained in the Plan or this Order shall be deemed to be a relinquishment of any rights, claims,

or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had

immediately prior to the Effective Date on behalf of the estates or of themselves in accordance

with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, and the

Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes

of Action, rights of setoff, or other legal or equitable defenses as fully as if the Reorganization

Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting

any Claim left unimpaired by the Plan may be asserted to the same extent as if the

Reorganization Cases had not been commenced.

### E.    Approval of Injunction, Release and Exculpation Provisions

18.    The injunction, release and exculpation provisions contained in the Plan,

including those set forth in Article XII of the Plan, are expressly incorporated into this Order as

if set forth in full herein and are authorized and approved.

### F.    Hermelin Claims

19.    The Hermelin Claims are withdrawn, with prejudice.  Mr. Marc S.

Hermelin shall be forever barred from asserting or pursuing any Claims against the Debtors, their

estates or the Reorganized Debtors for any and all acts or omissions, transactions, events or other

occurrences taking place on or prior to the Effective Date, and his right, if any, to seek to lift the

automatic stay pursuant to section 362 of the Bankruptcy Code or modify the injunction set forth

in the Plan to assert any Claims are waived.

### G.    Settlement of ETHEX Criminal Fine Claims and Qui Tam Claims

20.    The settlement of the ETHEX Criminal Fine Claims and the Qui Tam

Claims as and to the extent set forth in the Stipulation of Settlement and Dismissal (the

"**Stipulation of Settlement and Dismissal**"), filed in Adv. Proc. No. 12-02005 (ALG), is

approved.  The Debtors are authorized to take such further actions and execute and deliver such

further documents as may be reasonably necessary to effectuate the Stipulation of Settlement and

Dismissal.

21.     Notwithstanding anything contained in the Stipulation of Settlement and

Dismissal or anything to the contrary contained herein or in the Plan, the discharge, release and

injunction of the Plan, as approved by this Order, shall apply to the United States of America,

and each of its agencies, departments, and agents; provided, nothing in the Plan or this Order

shall limit or expand the scope of discharge, release or injunction to which the Debtors or

Reorganized Debtors are entitled to under the Bankruptcy Code or applicable law, if any.  The

discharge, release and injunction provisions contained in the Plan and this Order are not intended

and shall not be construed to bar the United States from, subsequent to this Order, pursuing any

police or regulatory action.  Accordingly, notwithstanding anything contained in the Plan or this

Order to the contrary, nothing in the Plan or this Order shall discharge, release, impair or

otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning

of section 101(5) of the Bankruptcy Code; (2) any claim of the United States arising on or after

the Confirmation Date; (3) any valid right of setoff or recoupment of the United States against

any of the Debtors; or (4) any liability of the Debtors or Reorganized Debtors under

environmental law to any Governmental Unit (as defined by section 101(27) of the Bankruptcy

Code) as the owner or operator of property that such entity owns or operates after the

Confirmation Date (as defined in the Plan).  Nor shall anything in the Confirmation Order or the

Plan:  (i) enjoin or otherwise bar the United States or any governmental unit from asserting or

enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or

(ii) subject to paragraph 11 of the Stipulation of Settlement and Dismissal, divest any court,

commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United

States or any governmental unit are discharged or otherwise barred by this Order, the Plan, or the

Bankruptcy Code.  Moreover, except as otherwise agreed in the Stipulation of Settlement and

Dismissal, nothing in this Order or the Plan shall release any non-debtor, including any non-

debtor Released Parties (as defined in the Plan), from any liability to the United States, including

but not limited to any liabilities arising under the Internal Revenue Code, the environmental

laws, or the criminal laws against the non-debtor Released Parties, nor shall anything in the

Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or

other proceeding against the non-debtor Released Parties for any liability whatsoever; provided,

however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtors

under sections 524 and 1141 of the Bankruptcy Code.

**H.    Order Binding on All Parties**

22.    Pursuant to section 1141 of the Bankruptcy Code, effective as of the

Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly

provided in the Plan or this Order, the provisions of the Plan (including the exhibits to, and all

documents and agreements executed pursuant to, the Plan) and this Order shall be binding upon,

and inure to the benefit of the Debtors, all holders of Claims and Interests, and their respective

successors and assigns.

**I.    Approval of Discharge of Claims and Termination of Interests**

23.    The discharge provision as set forth in Section 12.3 of the Plan is

approved, is so ordered and shall be immediately effective on the Effective Date without further

order or action on the part of the Court or any other party.

24.     Except as specifically set forth in the Plan or herein, as of the Effective

Date, each Person that is a holder (as well as any trustees and agents on behalf of such Person) of

a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived,

released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the

Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior

to the Effective Date.  Except as otherwise provided in the Plan, upon the Effective Date, all such

holders of Claims and Interests and their affiliates shall be forever precluded and enjoined,

pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting

any such discharged Claim against or terminated Interest in any Debtor or Reorganized Debtor.

## J.     Exemption From Securities Laws

25.     The offering, issuance of and the distribution under the Plan and

associated documents and any and all agreements incorporated therein of the New Common

Stock Securities, including the Subscription Rights, the Rights Offering Stock, the Direct

Purchase Shares, the Commitment Fee Shares, and the Convertible Subordinated Notes Equity

Distribution, shall be exempt from the registration requirements of section 5 of the Securities Act

pursuant to section 1145 of the Bankruptcy Code and/or Section 4(a)(2) of the Securities Act and

Regulation D promulgated thereunder, to the maximum extent permitted thereunder.  Subject to

any transfer restrictions contained in the Certificate of Incorporation of Reorganized KV and/or

the New Stockholders Agreement, the New Common Stock issued on account of the Convertible

Subordinated Notes Equity Distribution may be resold by the holders thereof without restriction,

except to the extent that any such holder is deemed to be an "underwriter" as defined in section

2(a)(11) of the Securities Act and referred to in section 1145(b)(1) of the Bankruptcy Code, and

in compliance with any applicable state or foreign securities laws, if any, applicable at the time

of any future transfer of such securities.  Certain of the New Common Stock Securities other

than the Convertible Subordinated Notes Equity Distribution, including the Subscription Rights,

the Rights Offering Stock, the Direct Purchase Shares and the Commitment Fee Shares,

constitute "restricted securities" within the meaning of Rule 144 under the Securities Act and

accordingly may not be offered, sold, resold, pledged, delivered, allotted or otherwise transferred

absent an effective registration statement for such securities except in transactions that are

exempt from, or in transactions not subject to, the registration and prospectus delivery

requirements of the Securities Act and in compliance with any applicable state or foreign

securities laws applicable at the time of any future transfer of such securities.

**K.**     **Exemption From Certain Transfer Taxes**

26.     To the fullest extent permitted by applicable law, all sale transactions and

asset transfers by the Debtors or Reorganized Debtors, as applicable, approved by the

Bankruptcy Court on or after the Confirmation Date through and including the Effective Date,

including the transfers effectuated under the Plan, shall constitute "transfers under a plan" within

the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real

estate transfer, mortgage recording or other similar tax.

**L.**     **Administrative Bar Date**

27.     Except as otherwise provided in Section 3.2 of the Plan or in an order of

this Court, unless previously filed, a holder of an Administrative Expense Claim must file with

the Bankruptcy Court and serve on the Debtors or Reorganized Debtors (as the case may be), the

Claims Agent and the Office of the United States Trustee (the "**Notice Parties**"), proof of such

Administrative Expense Claim within thirty (30) days after the Effective Date.  Such proof of

Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor

that is purported to be liable for the Administrative Expense Claim and if the Administrative

Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed

by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the

amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense

Claim; and (v) supporting documentation for the Administrative Expense Claim.  Failure to file

and serve such proof of Administrative Expense Claim timely and properly shall result in the

Administrative Expense Claim being forever barred and discharged.  Unless previously provided

by the Debtors, the Debtors shall provide notice of the last date to file an Administrative Expense

Claim in the Confirmation Notice.

**M.      Fee Claims**

28.      Any Professional Person seeking allowance by the Bankruptcy Court of a

Fee Claim shall file with the Bankruptcy Court and serve notice of same on the Reorganized

Debtors, Epiq, the Creditors' Committee and the Office of the United States Trustee its

respective final application for allowance of compensation for services rendered and

reimbursement of expenses incurred prior to the Effective Date no later than forty-five (45)

calendar days after the Effective Date.  Objections to such Fee Claims, if any, must be filed and

served on the applicable Professional Person, the Reorganized Debtors, Epiq, the Creditors'

Committee and the Office of the United States Trustee by no later than sixty-five (65) calendar

days after the Effective Date or such other date as established by the Bankruptcy Court.

**N.      Cancellation of Existing Securities and Agreements**

29.      Except for the purpose of evidencing a right to distribution under the Plan,

and except as otherwise set forth herein or in the Plan (including in Section 7.3 of the Plan), on

the Effective Date all agreements, instruments, and other documents evidencing any Claim or

Interest, other than Intercompany Interests, and any rights of any holder in respect thereof, shall

be deemed cancelled, discharged and of no force or effect.

**O.     Stay of Confirmation Order Waived**

30.     For good cause shown, the provisions of Bankruptcy Rule 3020(e) shall

not apply to this Order and the Debtors are authorized to consummate the Plan immediately upon

entry of this Order.  The period in which an appeal with respect to this Order must be filed shall

commence immediately upon the entry of this Order.

**P.     Binding Effect of Prior Orders**

31.     Pursuant to section 1141 of the Bankruptcy Code, effective as of and

subject to the occurrence of the Effective Date and subject to the terms of the Plan and this

Order, all prior orders entered in the Reorganization Cases, all documents and agreements

executed by the Debtors as authorized and directed thereunder and all motions or requests for

relief by the Debtors pending before the Court as of the Effective Date that ultimately are granted

shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and

their respective successors and assigns.

32.     Notwithstanding anything to the contrary herein or in the Plan, nothing in

the Plan or this Order shall limit or otherwise affect the Debtors' obligations under that certain

Settlement Agreement and Release dated October 18, 2012, by and among Zydus

Pharmaceuticals (USA), Inc. and Nesher Pharmaceuticals (USA) LLC, on the one hand, and K-V

Pharmaceutical Company, K-V Generic Pharmaceuticals, Inc. and DrugTech Corporation, on the

other hand (as amended, modified, and/or supplemented, the "**Nesher Settlement Agreement**"),

which was approved by the Court by order dated November 16, 2012 [Docket No. 383], and the

provisions of the Nesher Settlement Agreement, including the rights and obligations of the

parties thereunder, shall survive the Effective Date.

33.    The provisions of the Protective Orders (as defined in the Disclosure

Statement) survive the Effective Date as and to the extent set forth therein and, notwithstanding

anything to the contrary contained herein or the Plan, the rights and obligations of the parties

thereto for any breach thereof also shall survive the Effective Date.  Further, notwithstanding

entry of this Order by the Bankruptcy Court and the occurrence of the Effective Date, the

Bankruptcy Court shall retain jurisdiction over the Stipulated Order Pursuant to Bankruptcy Rule

2004 Authorizing the Examination of PharMerica Corp. [Docket No. 478] and the Stipulated

Order Pursuant to Bankruptcy Rule 2004 Authorizing the Examination of Alere Women's and

Children's Health, LLC [Docket No. 476], including, resolving matters relating to compliance by

Pharmerica Corp., by Alere Women's and Children's Health, LLC and by the Reorganized

Debtors (or any applicable successor in interest of the Debtors) with each such respective

stipulated order and the Protective Orders, and the Reorganized Debtors, Pharmerica Corp., and

Alere Women's and Children's Health, LLC  shall be entitled to pursue all rights and remedies

set forth in such stipulated orders and the Protective Orders.

**Q.    Notice of Confirmation of the Plan**

34.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or

the Reorganized Debtors are directed to serve a notice of the entry of this Order, substantially in

the form of Appendix II attached hereto (the "**Confirmation Notice**"), on all parties that they

served with notice of the Confirmation Hearing and parties to executory contracts or unexpired

leases no later than ten (10) days after the Effective Date; provided, however, that the Debtors or

the Reorganized Debtors shall be obligated to serve the Confirmation Notice only on the record

holders of Claims or Interests as of the Confirmation Date.  As soon as practicable after the entry

of this Order, the Debtors shall make copies of this Order and the Confirmation Notice available

on their reorganization website at http://dm.epiq11.com/KVD.

**R.    Miscellaneous Provisions**

35.    The Debtors are authorized to further amend or modify the Plan at any

time prior to the substantial consummation of the Plan, but only in accordance with, and subject

to, section 1127 of the Bankruptcy Code and Section 14.5 of the Plan, without further order of

the Court.  In addition, without the need for a further order or authorization of this Court, but

subject to the express provisions of this Order, the Debtors shall be authorized and empowered as

may be necessary to make non-material modifications to the documents filed with the Court,

including the Plan Supplement or documents forming part of the evidentiary record at the

Confirmation Hearing, in their reasonable business judgment, but only in accordance with, and

subject to Section 14.5 of the Plan.

36.    The Creditors' Committee shall be automatically dissolved on the

Effective Date and, on the Effective Date, each member (including each officer, director,

employee or agent thereof) of the Creditors' Committee and each professional retained by the

Creditors' Committee shall be released and discharged from all rights, duties, responsibilities and

obligations arising from, or related to, the Debtors, its membership on the Creditors' Committee,

the Plan or the Reorganization Cases, except with respect to: (i) any matters concerning any Fee

Claims held or asserted by any professionals retained by the Creditors' Committee; or (ii) any

appeals of this Order, or any appeal relating to the Postpetition Interest Amount, through the date

such appeals are finally decided, settled, withdrawn or otherwise resolved.

37.     On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute and defend their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Reorganized Debtors shall be responsible for the fees, costs and expenses associated with the prosecution and defense of such Fee Claims.

38.     Subject to occurrence of the Effective Date, (i) the Manufacturing Agreement between DPT Laboratories, LTD and K-V Pharmaceutical Company (as amended, modified and/or supplemented, the "**Manufacturing Agreement**") shall be deemed assumed by K-V Pharmaceutical Company as of the Effective Date pursuant to section 365 of the Bankruptcy Code, and (ii) the Cure Amount shall be the sole amount necessary to be paid by KV Pharmaceutical Company for any claims and obligations existing as of the Petition Date under the Manufacturing Agreement (provided that, notwithstanding anything contained herein or in the Plan to the contrary, any indemnity obligations of K-V Pharmaceutical Company that are not yet known, fixed and/or liquidated as of the date of such assumption shall survive).

39.     Notwithstanding anything contained herein or the Plan to the contrary, the priority to insurance proceeds in favor of Persons that served as a director or officer of the Debtors at any time on and after the Petition Date provided in section 12.12(b) of the Plan shall not apply to proceeds (or access to such proceeds) of any insurance policy covering claims asserted or to be asserted against any defendant in the PPFG Securities Litigation.

40.     All insurance policies listed on the that certain schedule agreed to by and between K-V Pharmaceutical Company and AIG (as defined below) pursuant to letter

agreement, together with any agreements related to such policies (collectively, the "**AIG Policies**") between American Home Assurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., Insurance Company of the State of Pennsylvania, Lexington Insurance Company, Commerce & Industry Insurance Company, and Chartis Specialty Insurance Company, together with any other member companies of American International Group, Inc. that provided insurance coverage to Debtors (collectively, "**AIG**" or "**AIG Companies**"), on-the-one-hand, and the Debtors, on-the-other-hand, shall be treated under the Plan as assumed contracts.  The Cure Amount is $10,335, with the sole recourse for payment of such Cure Amount as well as any and all valid amounts due and owing by a Debtor limited to the applicable AIG Company setting off against the applicable Debtor's collateral held by such AIG Company in accordance with the terms of the applicable AIG Policy(ies).  No other cure payments are owed as of the Effective Date, and all other rights and obligations of the parties shall survive and the Effective Date and be satisfied after the Effective Date in the ordinary course of business.  Notwithstanding anything to the contrary, nothing in the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to or have the effect of, impairing the insurers' legal, equitable or contractual rights, if any, including without limitation, any rights of setoff, recoupment, arbitration or arising from a change of control, if any, in any respect; provided, that notwithstanding the foregoing or anything contained in any of the AIG Policies to the contrary, the AIG Companies shall have no right to terminate coverage or take any actions against any of the debtors in respect of a change of control resulting from the Debtors emergence from these chapter 11 cases.  The rights of the parties with respect to such agreements otherwise shall be determined pursuant to the applicable agreements.

41.    Pursuant to paragraph 18 of that certain *Final Cash Collateral Order (1)*
*Authorizing Use of Cash Collateral and Providing for Adequate Protection, (2) Granting Liens*
*and Providing Superpriority Administrative Expense Status, and (3) Modifying the Automatic*
*Stay Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code* [Dkt. No. 144], the
Challenge Period (as defined in that certain *Stipulation and Order Extending Committee*
*Challenge Period* [Dkt. No. 1035], dated August 6, 2013 (the "Ninth Stipulation and Order")),
for the Creditors' Committee is hereby extended through and including the occurrence of the
Effective Date under the Plan solely with respect to the potential challenges or potential causes
of action identified in the Ninth Stipulation and Order, and all the respective parties' rights under
the Ninth Stipulation and Order are otherwise expressly reserved.

42.    Failure specifically to include or reference particular sections or
provisions of the Plan or any related agreement in this Order shall not diminish or impair the
effectiveness of such sections or provisions, it being the intent of the Court that the Plan be
confirmed and such related agreements be approved in their entirety.

43.    Any document related to the Plan that refers to a plan of reorganization of
the Debtors other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be
modified such that the reference to a plan of reorganization of the Debtors in such document
shall mean the Plan confirmed by this Order, as appropriate.

44.    In the event of an inconsistency between the Plan, on the one hand, and
any other agreement, instrument, or document intended to implement the provisions of the Plan,
on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in
such agreement, instrument, or document).  In the event of any inconsistency between the Plan or

any agreement, instrument, or document intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of this Order shall govern.

45.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Reorganization Cases after the Effective Date shall be limited to the following parties:  (a) the Reorganized Debtors and their counsel, (b) the United States Trustee, and (c) any party known to be directly affected by the relief sought.

46.     If the Plan is revoked or withdrawn pursuant to Section 14.6 of the Plan prior to the Effective Date, the Plan shall be deemed null and void.

47.     Notwithstanding the entry of this Order, from and after the Effective Date, the Court shall retain such jurisdiction as is legally permissible of the Reorganization Cases, and all matters arising under, arising out of, or related to, the Reorganization Cases and the Plan (a) as provided for in Article XIII of the Plan, (b) as provided for in this Order, and (c) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

Dated: _____, 2013
        New York, New York


                                    _____
                                    THE HONORABLE ALLAN L. GROPPER
                                    UNITED STATES BANKRUPTCY JUDGE

## APPENDIX I

### PLAN OF REORGANIZATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

In re                                                    :          Chapter 11
                                                         :
K-V Discovery Solutions, Inc., et al.,[1]                :          Case No. 12-13346 (ALG)
                                                         :
                          Debtors.                       :          (Jointly Administered)

---------------------------------------------------------------- x

---

## SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR K-V DISCOVERY SOLUTIONS, INC. AND ITS AFFILIATED DEBTORS

---

Dated:       New York, New York
             July 17, 2013


**WILLKIE FARR & GALLAGHER LLP**
*Counsel for the Debtors and Debtors in Possession*
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) K-V Discovery Solutions, Inc. (7982); (ii) DrugTech Corporation (3690); (iii) FP1096, Inc. (3119); (iv) K-V Generic Pharmaceuticals, Inc. (7844); (v) K-V Pharmaceutical Company (8919); (vi) K-V Solutions USA, Inc. (4772); (vii) Ther-Rx Corporation (3624); and (viii) Zeratech Technologies USA, Inc. (6911).  The Debtors' executive headquarters are located at 16640 Chesterfield Grove, Suite 200, Chesterfield, MO 63005.

# TABLE OF CONTENTS

Page

ARTICLE I.    DEFINITIONS AND INTERPRETATION ..............................................................1

ARTICLE II.   RESOLUTION OF CERTAIN INTER-CREDITOR AND INTER-DEBTOR
              ISSUES .............................................................................................................19

    2.1.    *Settlement of Certain Inter-Creditor Issues.* .................................................19
    2.2.    *Formation of Debtor Groups for Convenience Purposes.* ..............................19
    2.3.    *Intercompany Claims.* ...................................................................................19

ARTICLE III. ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE
              FEES AND PRIORITY TAX CLAIMS ...........................................................19

    3.1.    *DIP Claims.* ...................................................................................................20
    3.2.    *Administrative Expense Claims.* .....................................................................20
    3.3.    *Fee Claims.* ....................................................................................................22
    3.4.    *U.S. Trustee Fees.* .........................................................................................23
    3.5.    *Priority Tax Claims.* ......................................................................................23

ARTICLE IV. CLASSIFICATION OF CLAIMS AND INTERESTS .......................................23

    4.1.    *Classification of Claims and Interests.* ...........................................................23
    4.2.    *Unimpaired Classes of Claims.* ......................................................................24
    4.3.    *Impaired Classes of Claims and Interests.* ......................................................24
    4.4.    *Separate Classification of Other Secured Claims.* ...........................................25

ARTICLE V.   TREATMENT OF CLAIMS AND INTERESTS ...............................................25

    5.1.    *Priority Non-Tax Claims (Class 1).* ................................................................25
    5.2.    *Other Secured Claims (Class 2).* ....................................................................25
    5.3.    *Senior Secured Notes Claims (Class 3).* ........................................................26
    5.4.    *ETHEX Criminal Fine Claims (Class 4).* .......................................................26
    5.5.    *Qui Tam Claims (Class 5).* .............................................................................27
    5.6.    *Convertible Subordinated Notes Claims (Class 6).* ..........................................27
    5.7.    *General Unsecured Claims (Class 7).* .............................................................27
    5.8.    *Existing Securities Law Claims (Class 8(a)).* ..................................................28
    5.9.    *Equitably Subordinated Claims (Class 8(b)).* ..................................................28

**5.10.** ***Existing KV Interests (Class 9).*** ..........................................................28

ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
         REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS ..28

**6.1.** ***Class Acceptance Requirement.*** ..................................................28

**6.2.** ***Tabulation of Votes on a Non-Consolidated Basis.*** .....................29

**6.3.** ***Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
      "Cramdown."*** ............................................................................29

**6.4.** ***Elimination of Vacant Classes.*** ..........................................29

**6.5.** ***Voting Classes; Deemed Acceptance by Non-Voting Classes.*** ........29

**6.6.** ***Confirmation of All Cases.*** ..........................................29

ARTICLE VII. MEANS FOR IMPLEMENTATION ....................................................30

**7.1.** ***Continued Corporate Existence and Vesting of Assets in Reorganized
      Debtors.*** ...................................................................30

**7.2.** ***Plan Funding.*** ....................................................................31

**7.3.** ***Cancellation of Existing Securities and Agreements.*** .......................31

**7.4.** ***Cancellation of Certain Existing Security Interests.*** ........................31

**7.5.** ***Officers and Boards of Directors.*** ....................................31

**7.6.** ***Management Incentive Plan.*** ..........................................32

**7.7.** ***Corporate Action.*** ..........................................................32

**7.8.** ***New Stockholders Agreement.*** ..........................................33

**7.9.** ***Authorization, Issuance and Delivery of New Common Stock.*** ........33

**7.10.** ***New First Lien Term Loan.*** ..........................................34

**7.11.** ***Postpetition Interest Amount.*** ..........................................34

**7.12.** ***Rights Offering and Direct Purchase.*** ................................34

**7.13.** ***Intercompany Interests.*** ..................................................35

**7.14.** ***Insured Claims.*** ............................................................36

**7.15.** ***Comprehensive Settlement of Claims and Controversies.*** ...............36

**7.16.** ***Equitably Subordinated Claims.*** ........................................36

ARTICLE VIII. DISTRIBUTIONS ....................................................................37

**8.1.** ***Distributions.*** ..............................................................37

**8.2.** ***No Postpetition Interest on Claims.*** ....................................37

**8.3.** ***Date of Distributions.*** ....................................................37

**8.4.** ***Distribution Record Date.*** ..............................................37

| | | |
|---|---|---|
| 8.5. | *Disbursing Agent.* | 38 |
| 8.6. | *Delivery of Distribution.* | 38 |
| 8.7. | *Unclaimed Property.* | 38 |
| 8.8. | *Satisfaction of Claims.* | 39 |
| 8.9. | *Manner of Payment Under Plan.* | 39 |
| 8.10. | *Fractional Shares/De Minimis Cash Distributions.* | 39 |
| 8.11. | *No Distribution in Excess of Amount of Allowed Claim.* | 39 |
| 8.12. | *Exemption from Securities Laws.* | 39 |
| 8.13. | *Setoffs and Recoupments.* | 40 |
| 8.14. | *Rights and Powers of Disbursing Agent.* | 40 |
| 8.15. | *Withholding and Reporting Requirements.* | 41 |
| 8.16. | *Cooperation with Disbursing Agent.* | 41 |
| 8.17. | *Hart-Scott Rodino Antitrust Improvements Act.* | 41 |

ARTICLE IX.PROCEDURES FOR RESOLVING CLAIMS ...................................................42

| | | |
|---|---|---|
| 9.1. | *Objections to Claims.* | 42 |
| 9.2. | *Amendment to Claims.* | 42 |
| 9.3. | *Disputed Claims.* | 42 |
| 9.4. | *Estimation of Claims.* | 44 |
| 9.5. | *Expenses Incurred On or After the Effective Date.* | 44 |

ARTICLE X.EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................45

| | | |
|---|---|---|
| 10.1. | *General Treatment.* | 45 |
| 10.2. | *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* | 45 |
| 10.3. | *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.* | 45 |
| 10.4. | *Compensation and Benefit Programs.* | 46 |
| 10.5. | *Employment Agreements.* | 46 |

ARTICLE XI.CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ............47

| | | |
|---|---|---|
| 11.1. | *Conditions Precedent to Confirmation.* | 47 |
| 11.2. | *Conditions Precedent to the Effective Date.* | 47 |
| 11.3. | *Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.* | 48 |
| 11.4. | *Effect of Failure of Conditions.* | 48 |

ARTICLE XII. EFFECT OF CONFIRMATION ..................................................................49

    12.1.    *Binding Effect.* ..................................................................49

    12.2.    *Vesting of Assets.* ..................................................................49

    12.3.    *Discharge of Claims Against and Interests in the Debtors.* ..........................49

    12.4.    *Term of Pre-Confirmation Injunctions or Stays.* ..................................50

    12.5.    *Injunction Against Interference With Plan.* ......................................50

    12.6.    *Injunction.* ..................................................................50

    12.7.    *Releases.* ..................................................................51

    12.8.    *Exculpation and Limitation of Liability.* ........................................53

    12.9.    *Injunction Related to Releases and Exculpation.* ................................53

    12.10.    *Termination of Subordination Rights and Settlement of Related Claims.* ......53

    12.11.    *Retention of Causes of Action/Reservation of Rights.* ..........................54

    12.12.    *Indemnification Obligations; Insured Current Director & Officer Claims.* ...54

    12.13.    *Securities Litigations; Document Retention.* ....................................55

ARTICLE XIII. RETENTION OF JURISDICTION ..................................................56

ARTICLE XIV. MISCELLANEOUS PROVISIONS ..................................................57

    14.1.    *Exemption from Certain Transfer Taxes.* ......................................57

    14.2.    *Retiree Benefits.* ..................................................................58

    14.3.    *Dissolution of Creditors' Committee.* ............................................58

    14.4.    *Termination of Professionals.* ..................................................58

    14.5.    *Amendments.* ..................................................................58

    14.6.    *Revocation or Withdrawal of this Plan.* ........................................59

    14.7.    *Allocation of Plan Distributions Between Principal and Interest.* ...............59

    14.8.    *Severability.* ..................................................................59

    14.9.    *Governing Law.* ..................................................................60

    14.10.    *Section 1125(e) of the Bankruptcy Code.* ......................................60

    14.11.    *Inconsistency.* ..................................................................60

    14.12.    *Time.* ..................................................................60

    14.13.    *Exhibits.* ..................................................................61

    14.14.    *Notices.* ..................................................................61

    14.15.    *Filing of Additional Documents.* ................................................61

    14.16.    *Reservation of Rights.* ..........................................................61

## INTRODUCTION[2]

K-V Discovery Solutions, Inc. and the other debtors and debtors in possession in the above-captioned cases propose the following sixth amended joint chapter 11 plan of reorganization for the resolution of the Claims against and Interests in the Debtors.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits and supplements thereto, for a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of this Plan, and certain related matters including, among other things, certain tax matters, and the securities and other consideration to be issued and/or distributed under this Plan. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and Sections 14.5 and 14.6 of this Plan, the Debtors, reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

The only Persons that are entitled to vote on this Plan are the holders of Senior Secured Notes Claims, ETHEX Criminal Fine Claims, Qui Tam Claims, Convertible Subordinated Notes Claims, and General Unsecured Claims. Such Persons are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement, the respective schedules, notices and exhibits attached thereto and referenced therein, and the letter from the Creditors' Committee in support of the Plan, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

### ARTICLE I.

### DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1.    *2011 Securities Litigation*** means that certain securities class action litigation currently styled *In re K-V Pharmaceutical Company Securities Litigation*, No. 11CV01816 AGF, pending in the United States District Court for the Eastern District of Missouri, Eastern Division, including the Consolidated Amended Class Action Complaint For Violations Of Federal Securities Laws filed therein and any amendments thereto, and all cases consolidated thereunder, and including any appeals in connection therewith.

**1.2.    *503(b)(9) Claims*** means Claims that have been timely and properly filed prior to the Bar Date and that are granted administrative expense priority treatment pursuant to section 503(b)(9) of the Bankruptcy Code.

---

[2]    All capitalized terms used but not defined herein have the meanings set forth in Article I herein.

**1.3.** *Accredited Investor* means an "accredited investor" as defined in Rule 501(a) promulgated under Regulation D under the Securities Act.

**1.4.** *Ad Hoc Senior Secured Noteholders Group* means that certain ad hoc group of certain holders of Senior Secured Notes for which a Bankruptcy Rule 2019 statement was filed by Weil, Gotshal & Manges LLP.

**1.5.** *Ad Hoc Senior Secured Noteholders Group Advisors* means Weil, Gotshal & Manges LLP, as counsel to the Ad Hoc Senior Secured Noteholders Group, Houlihan Lokey Capital, Inc., as financial advisor to the Ad Hoc Senior Secured Noteholders Group and Fortgang Consulting LLC, as advisor to the Ad Hoc Senior Secured Noteholders Group.

**1.6.** *Administrative Bar Date* has the meaning set forth in Section 3.2(a) of this Plan.

**1.7.** *Administrative Expense Claim* means (a) any right to payment constituting a cost or expense of administration of the Reorganization Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code (other than a Fee Claim or U.S. Trustee Fees) for the period from the Petition Date to the Effective Date, including, without limitation: (i) any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and any indebtedness or obligations incurred or assumed by the Debtors during the Reorganization Cases; (ii) 503(b)(9) Claims; (iii) any payment to be made under this Plan to cure a default on an assumed executory contract or unexpired lease; (iv) the Senior Secured Notes Indenture Trustee Claim; (v) the Convertible Subordinated Notes Indenture Trustee Claim; and (vi) the Cash Collateral Expense Claims, and (b) any Claim that arose prior to the Petition Date that the Debtors are authorized to satisfy in the ordinary course of business pursuant to, and in accordance with, that certain *Amended Order Authorizing Debtors to (I) Honor Certain Prepetition Obligations to Customers and to Continue Customer Programs, and (II) Pay Medicaid and Other Insurance Rebate Obligations* [*Docket No. 338*], including, without limitation, Claims relating to Medicaid rebates.

**1.8.** *Allowed Claim* or Allowed [_____] Claim (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been sought within the applicable period of limitation fixed by this Plan or applicable law, except to the extent the Debtors or Reorganized Debtors, as the case may be, object to the enforcement of such Claim or, if an action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been sought, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by a Debtor in the ordinary course of business during the Reorganization Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

**1.9.**    ***Amended By-Laws*** means the amended and restated by-laws for the applicable Reorganized Debtor, on terms and conditions acceptable to the Debtors and the Investor Parties, substantially final forms of which will be contained in the Plan Supplement.

**1.10.**    ***Amended Certificates of Incorporation*** means the amended and restated certificates of incorporation (or articles of incorporation, as applicable) for the applicable Reorganized Debtor, on terms and conditions acceptable to the Investor Parties, substantially final forms of which will be contained in the Plan Supplement.

**1.11.**    ***Assets*** means all of the right, title and interest of the Debtors in and to property of whatever type or nature (real, personal, mixed, intellectual, tangible or intangible).

**1.12.**    ***Ballot*** means the form approved by the Bankruptcy Court and distributed to holders of impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

**1.13.**    ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

**1.14.**    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York, or any other court exercising competent jurisdiction over the Reorganization Cases or any proceeding therein.

**1.15.**    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

**1.16.**    ***Bar Date*** means any deadline for filing proofs of Claim, including, without limitation, Claims arising prior to the Petition Date (including 503(b)(9) Claims) and Administrative Expense Claims, as established by an order of the Bankruptcy Court or under the Plan.

**1.17.**    ***Bastogne*** means Bastogne Capital Management, LLC.

**1.18.**    ***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.19.**    ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.20.**    ***Cash Collateral Expense Claims*** means all amounts owing to the holders of Senior Secured Notes, the Ad Hoc Senior Secured Noteholders Group, and the Senior Secured Notes Indenture Trustee in respect of any fee or expense obligation (including the fees and expenses of their counsel and other advisors) incurred through the Effective Date of this Plan pursuant to (i) that certain *Agreed Interim Order (1) Authorizing Use of Cash Collateral and Providing for Adequate Protection, (2) Granting Liens and Providing Superpriority Administrative Expense Status, (3) Modifying the Automatic Stay and (4) Scheduling a Final Hearing, Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code* [Docket No. 45];

(ii) that certain *Final Order (1) Authorizing Use of Cash Collateral and Providing for Adequate Protection, (2) Granting Liens and Providing Superpriority Administrative Expense Status, and (3) Modifying the Automatic Stay Pursuant to Sections 105, 361, 362, and 363 of the Bankruptcy Code* [Docket No. 144]; or (iii) the Final DIP Order.

**1.21.**    ***Causes of Action*** means any and all actions, causes of action (including avoidance actions), suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

**1.22.**    ***Claim*** means any "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code, including, without limitation, any Claim arising after the Petition Date.

**1.23.**    ***Claims Agent*** means Epiq Bankruptcy Solutions, LLC, or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. §156(c).

**1.24.**    ***Class*** means each category of Claims or Interests established under Article IV of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.25.**    ***Collateral*** means any property or interest in property of the estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

**1.26.**    ***Commitment Fee Shares*** means 5% (781,250 shares) of New Common Stock to be issued to and allocated among the Investor Parties as compensation for their undertakings in the Stock Purchase Agreement (or to Silver Point pursuant to the Share Purchase Agreement), subject to dilution by the New Common Stock Securities to be issued pursuant to the Management Incentive Plan.

**1.27.**    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.28.**    ***Confirmation Hearing*** means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.29.**    ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code and reasonably acceptable to the Debtors and the Investor Parties.

**1.30.**    ***Convertible Subordinated Notes*** mean the 2.5% Contingent Convertible Subordinated Notes due 2033, issued pursuant to the Convertible Subordinated Notes Indenture, in the original aggregate principal amount of $200,000,000.

**1.31.** *Convertible Subordinated Notes Claims* means all Claims (excluding Existing Securities Law Claims) against KV, as issuer, arising under the Convertible Subordinated Notes and the Convertible Subordinated Notes Indenture (and related documents).

**1.32.** *Convertible Subordinated Notes Equity Distribution* means 7% (1,093,750 shares) of New Common Stock to be issued by Reorganized KV on the Effective Date to holders of Allowed Convertible Subordinated Notes Claims pursuant to the Plan, subject to dilution by the New Common Stock Securities to be issued pursuant to the Management Incentive Plan.

**1.33.** *Convertible Subordinated Notes Indenture* means that certain indenture dated as of May 16, 2003 (as amended, modified or supplemented from time to time), between KV, as issuer, and the Convertible Subordinated Notes Indenture Trustee, related to the Convertible Subordinated Notes, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.34.** *Convertible Subordinated Notes Indenture Trustee* means Deutsche Bank Trust Company Americas, solely in its capacity as indenture trustee under the Convertible Subordinated Notes Indenture.

**1.35.** *Convertible Subordinated Notes Indenture Trustee Claim* means all Claims of the Convertible Subordinated Notes Indenture Trustee for reasonable and documented fees and expenses under the terms of the Convertible Subordinated Notes Indenture (including, but not limited to, the reasonable and documented fees, costs and expenses incurred by the Convertible Subordinated Notes Indenture Trustee's professionals).

**1.36.** *Creditors' Committee* means the statutory committee of unsecured creditors appointed in the Reorganization Cases in accordance with section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

**1.37.** *Cure Amount* has the meaning set forth in Section 10.3 of this Plan.

**1.38.** *Cure Dispute* has the meaning set forth in Section 10.3 of this Plan.

**1.39.** *Cure Schedule* has the meaning set forth in Section 10.3 of this Plan.

**1.40.** *Current D&O Indemnity Reserve* means Cash in the amount of $2,000,000 to be reserved by the Debtors or Reorganized Debtors, as the case may be, on the Effective Date, which reserve shall be used for the purpose of indemnifying, defending, reimbursing, exculpating, advancing fees and expenses to, or limiting the liability of directors or officers who were directors or officers of any of the Debtors at any time after the Petition Date, against any Causes of Action or Claims.

**1.41.** *Current Officer Employment Agreements* has the meaning set forth in Section 10.5 of this Plan.

**1.42.** *D&O Claim Committee* means that certain committee, the members of which shall be identified in a filing to be included in the Plan Supplement.

**1.43.**    *Debtor(s)* means, individually or collectively, as the context requires: KV; K-V Discovery Solutions, Inc.; DrugTech Corporation; FP1096, Inc.; K-V Generic Pharmaceuticals, Inc.; K-V Solutions USA, Inc.; Ther-Rx Corporation; and Zeratech Technologies USA, Inc.

**1.44.**    *DIP Agent* means Silver Point, solely in its capacity as administrative agent under the DIP Credit Agreement, and any of its successors or assigns.

**1.45.**    *DIP Claims* means all Claims held by the DIP Agent and/or the DIP Lenders arising under or pursuant to the DIP Credit Agreement, including, without limitation, Claims for all principal amounts outstanding, interest, fees, reasonable and documented expenses, costs and other charges of the DIP Agent and the DIP Lenders.

**1.46.**    *DIP Credit Agreement* means that certain senior secured debtor-in-possession term loan agreement, dated December 11, 2012, by and among KV, as borrower, certain of the subsidiaries of KV, as guarantors, the DIP Agent, and the DIP Lenders (as may be amended, modified or supplemented from time to time on the terms and conditions set forth therein), and including any and all documents and instruments executed in connection therewith.

**1.47.**    *DIP Lenders* means the lenders party to the DIP Credit Agreement from time to time.

**1.48.**    *DIP Loan* means the senior secured debtor-in-possession term loan by and among KV, as borrower, certain of the subsidiaries of KV, as guarantors, the DIP Agent, and the DIP Lenders, the terms of which are set forth in the DIP Credit Agreement.

**1.49.**    *Direct Purchase Shares* means 11.84% (1,850,000 shares) of New Common Stock to be directly purchased by the Investor Parties under the Plan (or by Silver Point pursuant to the Share Purchase Agreement), subject to dilution by the Management Incentive Plan.

**1.50.**    *Disallowed* means a finding of the Bankruptcy Court in a Final Order, or provision in the Plan providing, that a Disputed Claim shall not be an Allowed Claim.

**1.51.**    *Disbursing Agent* means the entity, which may be a Reorganized Debtor, designated by the Debtors or the Reorganized Debtors to distribute the Plan Consideration, the Direct Purchase Shares, the Commitment Fee Shares, the Rights Offering Stock, and New First Lien Term Loan.

**1.52.**    *Disclosure Statement* means the disclosure statement that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including all exhibits and schedules annexed thereto or referred to therein).

**1.53.**    *Disclosure Statement Hearing* means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.54.**    *Disputed Claim* means, as of any relevant date, any Claim, or any portion thereof: (a) that is not an Allowed Claim or Disallowed Claim as of the relevant date; or (b) for which a

proof of Claim or Interest has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

1.55.    ***Disputed Claims Reserves*** means, collectively, the Disputed General Unsecured Claims Reserve and the Disputed Priority Claims Reserve.

1.56.    ***Disputed General Unsecured Claims Reserve*** has the meaning set forth in Section 9.3(c) of this Plan.

1.57.    ***Disputed Priority Claims Reserve*** has the meaning set forth in Section 9.3(b) of this Plan.

1.58.    ***Distribution Date*** means: (a) the Initial Distribution Date; (b) any Interim Distribution Date; or (c) the Final Distribution Date, as the context requires.

1.59.    ***Distribution Record Date*** means, with respect to all Classes for which distributions are to be made under the Plan (other than Classes 3 and 6), the third Business Day after the Confirmation Date or such other later date as shall be established by the Bankruptcy Court in the Confirmation Order.

1.60.    ***DTC*** means The Depository Trust Company.

1.61.    ***Effective Date*** means the first Business Day on which all conditions to the Effective Date set forth in Section 11.2 hereof have been satisfied or waived, and no stay of the Confirmation Order is in effect.

1.62.    ***Eligible Holder*** means any holder of an Allowed Convertible Subordinated Notes Claim as of the record date set forth in the Rights Offering Procedures who has timely and affirmatively certified in writing that such holder is an Accredited Investor in accordance with the Rights Offering Procedures.  Notwithstanding the foregoing, each of the Investor Parties and Silver Point shall be deemed Accredited Investors for purposes of the Plan and the Rights Offering without any further action by such Investor Parties or Silver Point.

1.63.    ***Equitably Subordinated Claim*** means: (a) subject to Section 7.16 hereof, any Hermelin Claim; or (b) any other Claim subject to subordination pursuant to section 510(c) of the Bankruptcy Code.

1.64.    ***Estate*** means each estate created in the Reorganization Cases pursuant to section 541 of the Bankruptcy Code.

1.65.    ***Estimation Order*** means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim. The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.66.** *ETHEX Criminal Fine Claims* means all Claims against any Debtor arising from or relating to that certain action captioned *United States of America v. ETHEX Corporation*, No. 4:10-CR-00117 (ERW) (E.D. Mo.), including, without limitation, Claims relating to criminal fines or other amounts required to be paid pursuant to the March 2, 2010 judgment entered by the United States District Court for the Eastern District of Missouri in such action (as subsequently modified by order dated November 16, 2010).

**1.67.** *ETHEX Criminal Fine Claims Distribution* means Cash payments in an amount equal to $10,002,716.50.

**1.68.** *ETHEX Criminal Fine Claims Payment Schedule* means Cash payments to be made by Reorganized KV as follows: (i) on or as soon thereafter as is reasonably practicable following the Effective Date, $4,231,584.50, and (ii) twelve (12) quarterly payments of $480,927.50, which shall be paid on each of (a) December 13, 2013, (b) March 14, 2014, (c) June 13, 2014, (d) September 13, 2014, (e) December 15, 2014, (f) March 16, 2015, (g) June 15, 2015, (h) September 15, 2015, (i) December 15, 2015, (j) March 15, 2016, (k) June 15, 2016, and (l) September 15, 2016.

**1.69.** *ETHEX Criminal Fine Settlement Order* means an order of the Bankruptcy Court, if any, that, among other things, approves a settlement, in form and substance acceptable to the Debtors and acceptable in amount to the Investor Parties, among the applicable Debtors and the United States Attorney for the Eastern District of Missouri relating to the ETHEX Criminal Fine Claims.

**1.70.** *Existing KV Interests* means the Interests in KV outstanding prior to the Effective Date.

**1.71.** *Existing Securities Law Claim* means any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any securities of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) except as otherwise provided for in this Plan, including Section 12.12 hereof, for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim.

**1.72.** *Farallon* means, collectively, Farallon Capital Partners, LP, Farallon Capital Institutional Partners, LP, Farallon Capital Institutional Partners II, LP, Farallon Capital Offshore Investors II, LP, Farallon Capital (AM) Investors, LP, Farallon Capital Institutional Partners III, LP, and Noonday Offshore, Inc.

**1.73.** *Fee Claim* means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Reorganization Cases, including, without limitation, in connection with final fee applications of such Professional Persons.

**1.74.** *Final Distribution Date* means the first Business Day that is 20 Business Days after the date on which all Disputed Claims have been resolved by Final Order (or such earlier or later date as may be reasonably determined by the Reorganized Debtors).

**1.75.** *Final DIP Order* means that certain Final Order (1) Authorizing Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay, Pursuant to Sections 105, 361, 362, 363, 364 and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014 [Docket No. 497], as amended, modified or supplemented by the Bankruptcy Court from time to time.

**1.76.** *Final Order* means an order, ruling or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court) that: (a) is in full force and effect; (b) is not stayed; and (c) is no longer subject to review, reversal, modification or amendment, by appeal or writ of certiorari; provided, however, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order.

**1.77.** *General Unsecured Claim* means any Claim other than: (a) a Secured Claim, including DIP Claims, Other Secured Claims, and Senior Secured Notes Claims; (b) an Administrative Expense Claim; (c) a Fee Claim; (d) a Priority Tax Claim; (e) a Priority Non-Tax Claim; (f) a Qui Tam Claim; (g) an ETHEX Criminal Fine Claim; (h) a Convertible Subordinated Notes Claim; (i) an Intercompany Claim; (j) an Existing Securities Law Claim; (k) an Equitably Subordinated Claim; and (l) U.S. Trustee Fees, and shall not include Claims that are Disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

**1.78.** *General Unsecured Claims Distribution* means Cash in an amount equal to $10,250,000.

**1.79.** *Hermelin Claims* mean all Claims against any Debtor asserted by or on behalf of Marc S. Hermelin, including, without limitation, the Hermelin Indemnification Claims and all other Claims asserted in the proof of claim assigned Claim No. 151 by the Claims Agent.

**1.80.** *Hermelin Indemnification Claims* mean all Claims against any Debtor asserted by or on behalf of Marc S. Hermelin relating to alleged indemnification obligations of any such Debtor in favor of Marc S. Hermelin, including, without limitation, claims asserted pursuant to that certain Indemnification Agreement, dated as of October 29, 2008, by and between Marc S. Hermelin and KV (as may have been amended, modified and/or supplemented).

**1.81.** *Hoak* means Hoak & Co.

**1.82.** *Initial Distribution Date* means the Effective Date or as soon thereafter as is practicable.

**1.83.**    ***Intercompany Claim*** means any Claim (including an Administrative Expense Claim), Cause of Action, or remedy asserted by a Debtor against another Debtor.

**1.84.**    ***Intercompany Interest*** means any Interest held by a Debtor in another Debtor.

**1.85.**    ***Interest*** means the interest (whether legal, equitable, contractual or other rights) of any holders of any class of equity securities of any of the Debtors represented by shares of common or preferred stock or other instruments evidencing an ownership interest in any of the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from the foregoing, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.86.**    ***Interim Distribution Date*** means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Reorganized Debtors determine, that an interim distribution should be made to holders of Allowed Claims in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such a distribution.

**1.87.**    ***Investor Parties*** means those certain parties, Capital Ventures International, Greywolf Capital Overseas Master Fund, Greywolf Capital Partners II L.P., Greywolf Opportunities Fund L.L.C., Kingdon Associates, Kingdon Credit Master Fund L.P., Kingdon Family Partnership, L.P., M. Kingdon Offshore Master Fund L.P., and Deutsche Bank Securities, Inc. (solely with respect to the Distressed Products Group), who are signatories to the Stock Purchase Agreement.

**1.88.**    ***Key Employees*** means Gregory Divis, in his capacity as Chief Executive Officer and President of the Debtors, Thomas McHugh, in his capacity as Chief Financial Officer, Treasurer and Vice President of the Debtors, and Patrick Christmas, in his capacity as General Counsel, Secretary and Vice President of the Debtors.

**1.89.**    ***Kingdon*** means Kingdon Capital Management, LLC and/or any of its affiliates.

**1.90.**    ***KV*** means K-V Pharmaceutical Company, one of the Debtors.

**1.91.**    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.92.**    ***Management Incentive Plan*** means the management equity incentive plan (equivalent to up to 10% of New Common Stock) upon the Effective Date, on a fully diluted basis, to be established for certain members of management of the Reorganized Debtors on the Effective Date and shall be on terms reasonably acceptable to the Debtors and the Investor Parties.  A copy of the Management Incentive Plan shall be contained in the Plan Supplement.

**1.93.**    ***Medicaid Participating States*** has the meaning given to it in the Prepetition Qui Tam Settlement Agreement.

**1.94.**    ***New Common Stock*** means, collectively, up to 15,625,000 shares of common stock of Reorganized KV, par value $0.01, to be issued by Reorganized KV in connection with the implementation of, and as authorized by, this Plan.

**1.95.    *New Common Stock Securities*** means, collectively, New Common Stock and options, warrants, or other securities convertible into New Common Stock, to be issued by Reorganized KV in connection with the implementation of, and as authorized by, this Plan.

**1.96.    *New Stockholders Agreement*** means the stockholders agreement, to be dated as of the Effective Date, among Reorganized KV and each of the Persons receiving New Common Stock Securities under the Plan, including through the Rights Offering, which shall be in form and substance acceptable to the Debtors and the Investor Parties, and a substantially final form of which will be contained in the Plan Supplement.

**1.97.    *New First Lien Agent*** means the administrative agent under the New First Lien Term Loan Agreement, and any of its successors or assigns.

**1.98.    *New First Lien Lenders*** means the lenders party to the New First Lien Term Loan Agreement.

**1.99.    *New First Lien Term Loan*** means the first lien term loan facility, the terms of which shall be set forth in the New First Lien Term Loan Agreement, which (a) shall be in the original principal amount of $100,000,000 or such other amount as agreed to by the Debtors and the Investor Parties as set forth in the Stock Purchase Agreement, (b) be funded by the New First Lien Lenders on the Effective Date, and (c) be otherwise on terms reasonably acceptable to the Debtors and the Investor Parties as set forth in the Stock Purchase Agreement.

**1.100.    *New First Lien Term Loan Agreement*** means that certain first lien term loan agreement, by and among Reorganized KV, as borrower, those entities identified as "guarantors" in the New First Lien Term Loan Agreement, the New First Lien Agent, and the New First Lien Lenders (as may be amended, modified or supplemented from time to time on the terms and conditions set forth therein), to be dated as of the Effective Date, the principal terms of which shall be contained in the Plan Supplement (which such terms shall not be amended in a manner that is materially adverse to Silver Point unless Silver Point consents to such amendment in writing prior thereto), and including any and all documents and instruments executed in connection therewith, each of which shall be on terms and in form and substance reasonably satisfactory to the Debtors and the Investor Parties as set forth in the Stock Purchase Agreement.

**1.101.    *Other Secured Claim*** means any Secured Claim against a Debtor other than (a) DIP Claims or (b) Senior Secured Notes Claims.

**1.102.    *Participating Ad Hoc Group*** means, collectively, (i) Scoggin, (ii) Farallon, (iii) Silverback, (iv) Bastogne, and (v) Hoak.

**1.103.    *Person*** means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization of whatever nature.

**1.104.    *Petition Date*** means August 4, 2012, the date on which the Debtors commenced the Reorganization Cases.

**1.105.  *Plan*** means this sixth amended joint chapter 11 plan proposed by the Debtors, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time with the consent of the Investor Parties as set forth herein, and in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules and the terms hereof or thereof.

**1.106.  *Plan Consideration*** means, with respect to any Class of Claims entitled to a distribution under this Plan, Cash, and/or New Common Stock, as the context requires.

**1.107.  *Plan Distribution*** means the payment or distribution under the Plan of the Plan Consideration.

**1.108.  *Plan Documents*** means the documents, other than the Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of the Plan, including, without limitation, the documents to be included in the Plan Supplement, the Stock Purchase Agreement, the New First Lien Term Loan Agreement, the New Stockholders Agreement, the Amended Certificates of Incorporation of the applicable Reorganized Debtors, the Amended By-laws of the applicable Reorganized Debtors, the Management Incentive Plan, the Schedule of Assumed Contracts and Leases, the notice of the D&O Claim Committee composition and any and all exhibits to the Plan and the Disclosure Statement; provided, that, subject to Section 14.9 hereof, all Plan Documents shall be in form and substance reasonably acceptable to the Investor Parties and the Debtors.

**1.109.  *Plan Supplement*** means the supplemental appendix to this Plan, to be filed no later than ten (10) calendar days prior to the deadline for Ballots to be received in connection with voting to accept or reject the Plan, which will contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of the Plan Documents.

**1.110.  *Post-Emergence Bonuses*** mean the bonuses to be paid by Reorganized KV to the Key Employees pursuant to the Post-Emergence Bonus Plan.

**1.111.  *Post-Emergence Bonus Plan*** means the bonus plan to provide for payment of bonuses to the Key Employees.  A copy of the Post-Emergence Bonus Plan, which may be included as part of the Management Incentive Plan, shall be contained in the Plan Supplement.

**1.112.  *Postpetition Accreted OID Amount*** means, in the event that the Bankruptcy Court determines that a Postpetition Interest Amount is due and owing, $4,694.02 per diem from the Petition Date through the date the Bankruptcy Court determines the Postpetition Interest Amount will have accrued; for the avoidance of doubt, the foregoing per diem amount is a fixed per diem amount and shall not be subject to increase or reduction.

**1.113.  *Postpetition Interest Amount*** means the amount (if any) of interest due and owing from and after the Petition Date to the Senior Secured Notes Indenture Trustee or any holder of the Senior Secured Notes under the Senior Secured Notes Indenture, as determined by the Bankruptcy Court at or prior to the Confirmation Hearing to be due and payable pursuant to the subordination provisions of the Convertible Subordinated Notes Indenture, provided, that such amount, if any, shall be paid solely in Cash by the Debtors pursuant to the terms set forth in this Plan.

**1.114.  *Potential Recharacterization Amount*** means an amount equal to all payments made at any time through the Effective Date (a) made to or on account of or for the benefit of the Senior Secured Notes Indenture Trustee, the collateral agent under the Senior Secured Notes Indenture, the Ad Hoc Senior Secured Noteholders Group and/or any holders of the Senior Secured Notes as adequate protection pursuant to the Final DIP Order or otherwise, and (b) for reimbursement of fees and expenses made by KV to the DIP Agent, the DIP Lenders, the Senior Secured Notes Indenture Trustee, the collateral agent under the Senior Secured Notes Indenture, the Ad Hoc Senior Secured Noteholders Group and/or any holders of the Senior Secured Notes.

**1.115.  *PPFG Securities Litigation*** means the consolidated federal securities class action litigation styled *Public Pension Fund Group v. KV Pharmaceutical Company, et al.*, Case No. 08cv01859 (CEJ), pending in the United States District Court for the Eastern District of Missouri, and filed on behalf of the purchasers of publicly traded securities of K-V Pharmaceutical Company between June 15, 2004 and January 23, 2009.

**1.116.  *Prepetition Qui Tam Settlement Agreement*** means that certain Settlement Agreement, entered into in or around December 2011, by and among the United States of America, acting through the United States Department of Justice and the Untied States Attorney's Office for the District of Massachusetts, and on behalf of the Office of Inspector General of the Department of Health and Human Services and the TRICARE Management Activity; KV; and Constance Conrad.

**1.117.  *Priority Non-Tax Claim*** means any Claim, other than an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.118.  *Priority Tax Claim*** means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.119.  *Professional Person(s)*** means all Persons retained by order of the Bankruptcy Court in connection with the Reorganization Cases, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to order of the Bankruptcy Court.

**1.120.  *Pro Rata Share*** means with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

**1.121.  *PSA*** means that certain Plan Support Agreement dated June 6, 2013, by and among the Investors and (i) the Participating Ad Hoc Group, (ii) Varana, and (ii) Telemetry.

**1.122.  *Qui Tam Claims*** means all Claims against any Debtor arising from or relating to that certain action captioned *United States ex rel. Constance Conrad v. Abbott Laboratories, Inc. et al.,* No. 02-CV-11738-NG (D. Mass) settled pursuant to the Prepetition Qui Tam Settlement Agreement (including, all other settlement agreements between KV and each Medicaid Participating States arising from or relating to the Settlement Agreement referred to in Section 1.116), and shall not include Claims where a timely and properly filed proof of claim was not

filed; provided that, the Claim of Constance Conrad for fees and costs as set forth in paragraph 4 of the Prepetition Qui Tam Settlement Agreement shall be treated as a General Unsecured Claim.

**1.123.** *Qui Tam Claims Distribution* means Cash payments in an amount equal to $10,002,716.50.

**1.124.** *Qui Tam Claims Payment Schedule* means Cash payments to be made by Reorganized KV as follows: (i) on or as soon thereafter as is reasonably practicable following the Effective Date, $4,231,584.50, and (ii) twelve (12) quarterly payments of $480,927.50, which shall be paid on each of (a) December 13, 2013, (b) March 14, 2014, (c) June 13, 2014, (d) September 13, 2014, (e) December 15, 2014, (f) March 16, 2015, (g) June 15, 2015, (h) September 15, 2015, (i) December 15, 2015, (j) March 15, 2016, (k) June 15, 2016, and (l) September 15, 2016; provided that, in the case of (i) and (ii) each holder of an Allowed Qui Tam Claim shall receive a Pro Rata Share of the Qui Tam Claims Distribution in an amount that is proportionate to the payment schedule set forth on Exhibits A and B to the Prepetition Qui Tam Settlement Agreement (adjusted proportionately to account for any Medicaid Participating State that did not timely and properly file a proof of claim in the Reorganization Cases).

**1.125.** *Qui Tam Settlement Order* means one or more orders of the Bankruptcy Court, if any, that, among other things, approves one or more settlements, each in form and substance acceptable to the Debtors and acceptable in amount to the Investor Parties, relating to the Qui Tam Claims, among (i) the applicable Debtors, Constance Conrad and the United States Department of Justice, and/or (ii) the applicable Debtors and any applicable Medicaid Participating States.

**1.126.** *Released Parties* means, collectively: (a) the Debtors and their respective affiliates; (b) the DIP Agent; (c) the DIP Lenders; (d) holders of Senior Secured Notes Claims; (e) holders of Convertible Subordinated Notes Claims; (f) the Senior Secured Notes Indenture Trustee; (g) the Convertible Subordinated Notes Indenture Trustee; (h) each of the Investor Parties; (i) the Creditors' Committee and its current and former members, (j) the Ad Hoc Senior Secured Noteholders Group and its members; (k) the Participating Ad Hoc Group and its members (each of (a) through (k), solely in its capacity as such); (l) Silver Point (in all of its capacities with respect to this Plan); (m) Varana, (n) Telemetry and (o) each of the foregoing parties' current officers, affiliates, partners, directors, employees, agents, members, advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals retained by such Persons), together with their respective successors and assigns, each solely in its capacity as such; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Reorganization Cases and the transactions contemplated by the Plan; provided, further, that no Person shall be a Released Party if it objects to and/or opts out of the releases provided for in Article XII of the Plan.

**1.127.** *Reorganization Cases* means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and captioned *In re K-V Discovery Solutions, Inc., et al.*, No. 12-13346 (ALG) (Jointly Administered).

**1.128.** ***Reorganized Debtor*** means the applicable reorganized Debtor or any successors thereto by merger, consolidation or otherwise, on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

**1.129.** ***Reorganized KV*** means KV on and after the Effective Date.

**1.130.** ***Rights Exercise Price*** means the purchase price for each share of Rights Offering Stock, as set forth in the Rights Offering Procedures and approved by the Bankruptcy Court. The Rights Exercise Price for the Rights Offering Stock will be set at $20.00 per share of New Common Stock.

**1.131.** ***Rights Offering*** means the offering of Subscription Rights to purchase 11,900,000 shares of New Common Stock to be issued by Reorganized KV pursuant to the Plan, for an aggregate purchase price of the Rights Offering Amount.

**1.132.** ***Rights Offering Amount*** means up to $238 million.

**1.133.** ***Rights Offering Pro Rata Stock Amount*** means, with respect to each Eligible Holder, a number of shares of Rights Offering Stock equal to the ratio (expressed as a percentage) of (i) such Eligible Holder's Rights Participation Claim Amount to (ii) $200,000,000, multiplied by the total number of shares of Rights Offering Stock, with the product of the foregoing rounded down to the next whole number, subject to the agreement by each of the Investor Parties (other than Kingdon) pursuant to the Stock Purchase Agreement to purchase its proportion of the Unsubscribed Shares.

**1.134.** ***Rights Offering Procedures*** means the procedures governing the Rights Offering, which procedures are attached as an exhibit to the Disclosure Statement, and shall be reasonably acceptable to the Debtors and the Investor Parties.

**1.135.** ***Rights Offering Stock*** means the shares of the New Common Stock issued pursuant to the Rights Offering, including any Unsubscribed Shares acquired by any Investor Parties pursuant to the Stock Purchase Agreement (or by Silver Point pursuant to the Share Purchase Agreement). The Rights Offering Stock shall be subject to dilution from the New Common Stock Securities issued pursuant to the Management Incentive Plan.

**1.136.** ***Rights Participation Claim Amount*** means, in the case of a holder of a Convertible Subordinated Notes Claim who is an Eligible Holder, the principal amount of such holder's Convertible Subordinated Notes Claim.

**1.137.** ***Run Off D&O Policy*** has the meaning set forth in Section 7.5(c) of this Plan.

**1.138.** ***Schedule of Assumed Contracts and Leases*** means a schedule of the contracts and leases to be assumed pursuant to section 365 of the Bankruptcy Code and Section 10.1 hereof, which shall be filed by the Debtors (in consultation with the Investor Parties) at least five (5) calendar days prior to the deadline for Ballots to be received in connection with voting on the Plan, and which shall be reasonably acceptable to the Debtors and the Investor Parties, as such schedule may be amended from time to time on or before the Confirmation Date.

**1.139.  *Schedules*** has the meaning set forth in Section 9.3(b) of this Plan.

**1.140.  *Scoggin*** means, collectively, Scoggin Capital Management II LLC, Scoggin International Fund, Ltd., Scoggin Worldwide Fund, Ltd., and J. Goldman Master Fund, L.P.

**1.141.  *Secured Claim*** means a Claim, either as set forth in this Plan, as agreed to by the holder of such Claim and the Debtors or as determined by a Final Order in accordance with sections 506(a) and 1111(b) of the Bankruptcy Code: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.142.  *Securities Act*** means the Securities Act of 1933, as amended.

**1.143.  *Securities Litigation Documents*** has the meaning set forth in Section 12.13(b) of this Plan.

**1.144.  *Securities Litigations*** means, collectively, the 2011 Securities Litigation and the PPFG Securities Litigation.

**1.145.  *Senior Secured Notes*** mean the 12% Senior Secured Notes due March 15, 2015 issued pursuant to the Senior Secured Notes Indenture, in the original aggregate principal amount of $225,000,000 with an original aggregate purchase amount of $218,250,000 paid by the original beneficial holders of the Senior Notes.

**1.146.  *Senior Secured Notes Claims*** means all Claims (including undersecured claims, if any, pursuant to section 506 of the Bankruptcy Code, but excluding Existing Securities Law Claims) against KV, as issuer, and each of the other Debtors, as guarantors, arising under the Senior Secured Notes and the Senior Secured Notes Indenture (and related documents); provided, however, that Senior Secured Notes Claims shall only include the amount of original issue discount that had accreted as of the Petition Date pursuant to the terms of the Senior Secured Notes Indenture.

**1.147.  *Senior Secured Notes Indenture*** means that certain indenture dated as of March 17, 2011 (as amended, modified or supplemented from time to time), between KV, as issuer, each of the other Debtors, as guarantors, and the Senior Secured Notes Indenture Trustee, related to the Senior Secured Notes, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.148.  *Senior Secured Notes Indenture Trustee*** means Wilmington Trust National Association as successor by merger to Wilmington Trust FSB, solely in its capacity as indenture trustee and collateral agent under the Senior Secured Notes Indenture.

**1.149.  *Senior Secured Notes Indenture Trustee Claim*** means all Claims of the Senior Secured Notes Indenture Trustee for reasonable and documented fees and expenses under the terms of the Senior Secured Notes Indenture (including, but not limited to, the reasonable and

documented fees, costs and expenses incurred by the Senior Secured Notes Indenture Trustee's professionals).

    **1.150.**  *Share Purchase Agreement* means that certain Share Purchase Agreement dated June 21, 2013, entered into by and among the Investors, Silver Point and KV.

    **1.151.**  *Silverback* means Silverback Asset Management, LLC.

    **1.152.**  *Silver Point* means Silver Point Finance, LLC or one or more of its affiliates.

    **1.153.**  *SIR Claim* means the unsatisfied portion of any self-insured retention or deductible as of the date an Allowed Claim is Allowed.

    **1.154.**  *Stock Purchase Agreement* means that certain Second Amended and Restated Stock Purchase and Backstop Agreement, dated June 6, 2013, by and among the Investor Parties and KV (as amended, modified and/or supplemented from time to time).

    **1.155.**  *Subscription Rights* means the non-transferable, non-certificated subscription rights of Eligible Holders that timely vote to accept the Plan to purchase shares of Rights Offering Stock in connection with the Rights Offering on the terms and subject to the conditions set forth in the Plan and the Rights Offering Procedures.

    **1.156.**  *Subsidiary* means any corporation, association or other business entity of which at least the majority of the securities or other ownership interest is owned or controlled by a Debtor and/or one or more subsidiaries of the Debtor.

    **1.157.**  *Telemetry* means Telemetry Securities LLC.

    **1.158.**  *U.S. Trustee* means the United States Trustee for the Southern District of New York.

    **1.159.**  *U.S. Trustee Fees* means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

    **1.160.**  *Unfunded Backstop Obligation* means any obligation of Silver Point to purchase Unsubscribed Shares that has not been performed on the Effective Date in accordance with the Share Purchase Agreement.

    **1.161.**  *Unfunded Direct Purchase Obligation* means any obligation of Silver Point or any Investor Party to purchase Direct Purchase Shares that has not been performed on the Effective Date in accordance with the Share Purchase Agreement or the Stock Purchase Agreement, as applicable.

    **1.162.**  *Unsubscribed Shares* means shares of Rights Offering Stock that are not timely, duly and validly subscribed and paid for by Eligible Holders that timely vote to accept the Plan in accordance with the Rights Offering Procedures.

    **1.163.**  *Varana* means Varana Capital Master, LP.

B.        **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except for the rules of construction contained in sections 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Any reference in this Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

C.        *Appendices and Plan Documents.*

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at http://dm.epiq11.com/KVD, or obtain a copy of the Plan Documents by a written request sent to the Claims Agent at the following address:

Epiq Bankruptcy Solutions, LLC
FDR Station
P.O. Box 5014
New York, NY 10150-5014
(646) 282-2500

# ARTICLE II.

## RESOLUTION OF CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES

### 2.1.  *Settlement of Certain Inter-Creditor Issues.*

The treatment of Claims and Interests under this Plan represents, among other things, the settlement and compromise of certain potential inter-creditor disputes.

### 2.2.  *Formation of Debtor Groups for Convenience Purposes.*

The Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. Notwithstanding the foregoing, the Debtors reserve the right to seek, with the consent of the Investor Parties, to substantively consolidate any two or more Debtors, provided that such substantive consolidation does not materially and adversely impact the amount of the distributions to any Person under the Plan.

### 2.3.  *Intercompany Claims.*

Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims will be adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, or discharged to the extent reasonably determined appropriate by the Reorganized Debtors. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Bankruptcy Court or by the stockholders of any of the Reorganized Debtors.

# ARTICLE III.

## ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

The Plan constitutes a joint plan of reorganization for each of the Debtors.  All Claims and Interests, except Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article IV below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtors have not been classified, and the holders thereof are not entitled to vote on this Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest also is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

### 3.1.    *DIP Claims.*

Subject to adjustment pursuant to Section 7.12(c) and/or (d) hereof, in full satisfaction, settlement, release and discharge of the Allowed DIP Claims, on the Effective Date, all Allowed DIP Claims shall be paid in full in Cash pursuant to Section 7.2 on the Effective Date.  Upon payment and satisfaction in full of all Allowed DIP Claims, all Liens and security interests granted to secure such obligations, whether in the Reorganization Cases or otherwise, shall be terminated and of no further force or effect.

### 3.2.    *Administrative Expense Claims.*

(a)    Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim, other than the holder of:

(i)    a DIP Claim;

(ii)    a Fee Claim;

(iii)    a 503(b)(9) Claim;

(iv)    an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(v)    an Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor;

(vi)    an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

(vii)    an Administrative Expense Claim held by a current officer, director or employee of the Debtors for indemnification, contribution, or advancement of expenses pursuant to: (A) any Debtor's certificate of incorporation, by-laws, or similar organizational document, or (B) any indemnification or contribution agreement approved by the Bankruptcy Court;

(viii)    an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;

(ix)    a Senior Secured Notes Indenture Trustee Claim;

(x)    a Convertible Subordinated Notes Indenture Trustee Claim; or

(xi)    a Cash Collateral Expense Claim

must file with the Bankruptcy Court and serve on the Debtors or Reorganized Debtors (as the case may be), the Claims Agent, and the Office of the United States Trustee, proof of such Administrative Expense Claim **within thirty (30) days after the Effective Date** (the "*Administrative Bar Date*"). Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

(b)    Treatment of Administrative Expense Claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive from the applicable Reorganized Debtor Cash in an amount equal to such Allowed Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities.

In the case of the Senior Secured Notes Indenture Trustee Claim and the Convertible Subordinated Notes Indenture Trustee Claim, such Claims will be paid in the ordinary course of business (subject to the Debtors' prior receipt of invoices and reasonable documentation in connection therewith and without the requirement to file a fee application with the Bankruptcy Court, with copies to be provided to the Investor Parties) but no later than the Effective Date; provided, that such fees, costs and expenses are reimbursable under the terms of

the Senior Secured Notes Indenture and the Convertible Subordinated Notes Indenture, as applicable; and provided, further, that the Senior Secured Notes Indenture Trustee and the Convertible Subordinated Notes Indenture Trustee will receive payment in the ordinary course of business (subject to the Reorganized Debtors' prior receipt of invoices and reasonable documentation in connection therewith) for all reasonable fees, costs, and expenses incurred after the Effective Date in connection with the implementation of any provisions of this Plan (in each case, not to exceed $25,000).  In the event that the Debtors dispute all or a portion of the Senior Secured Notes Indenture Trustee Claim or the Convertible Subordinated Notes Indenture Trustee Claim, the Debtors shall pay the undisputed amount of such Senior Secured Notes Indenture Trustee Claim or Convertible Subordinated Notes Indenture Trustee Claim (as the case may be), and segregate the remaining portion of such Claim until such dispute is resolved by the parties or by the Bankruptcy Court.

In the case of the Cash Collateral Expense Claims, such Claims will be paid in full in Cash on the Effective Date to the extent such Claims have not already been paid in Cash in accordance with an order of the Court.  In the event that the Debtors dispute all or a portion of the Cash Collateral Expense Claims, the Debtors shall pay the undisputed amount of such Cash Collateral Expense Claims, and segregate the remaining portion of such Claims until such dispute is resolved by the parties or by the Bankruptcy Court.

### 3.3. *Fee Claims.*

(a)    Time for Filing Fee Claims.

Any Professional Person seeking allowance by the Bankruptcy Court of a Fee Claim shall file its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date no later than forty-five (45) calendar days after the Effective Date. Objections to such Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) calendar days after the Effective Date or such other date as established by the Bankruptcy Court.

(b)    Treatment of Fee Claims.

All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall be paid in full in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date, and (y) fourteen (14) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Reorganized Debtors. On the Effective Date, to the extent known, the Reorganized Debtors shall reserve and hold in a segregated account Cash in an amount equal to the accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be disbursed solely to the holders of Allowed Fee Claims with the remainder to be reserved until all Allowed Fee Claims have been paid in full or all remaining Fee Claims have been Disallowed by Final Order, at which time any remaining Cash in the segregated account shall become the sole and exclusive property of the Reorganized Debtors.

**3.4.**    *U.S. Trustee Fees.*

The Debtors or Reorganized Debtors, as applicable, shall pay all outstanding U.S. Trustee Fees of a Debtor on an ongoing basis on the later of: (i) the Effective Date; and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Reorganization Case, the applicable Reorganization Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.5.**    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, in the Debtors' or Reorganized Debtors' discretion, either: (i) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

## ARTICLE IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1.**    *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are: (i) impaired or unimpaired by this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (Deemed to accept) |
| Class 2 | Other Secured Claims | No | No (Deemed to accept) |
| Class 3 | Senior Secured Notes Claims | Yes | Yes |
| Class 4 | ETHEX Criminal Fine Claims | Yes | Yes |
| Class 5 | Qui Tam Claims | Yes | Yes |
| Class 6 | Convertible Subordinated Notes Claims | Yes | Yes |

| Class 7 | General Unsecured Claims | Yes | Yes |
| Class 8(a) | Existing Securities Law Claims | Yes | No (Deemed to reject) |
| Class 8(b) | Equitably Subordinated Claims | Yes | No (Deemed to reject) |
| Class 9 | Existing KV Interests | Yes | No (Deemed to reject) |

### 4.2. *Unimpaired Classes of Claims.*

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code.

(a)    Class 1: Class 1 consists of all Priority Non-Tax Claims.

(b)    Class 2: Class 2 consists of all Other Secured Claims.

### 4.3. *Impaired Classes of Claims and Interests.*

(a)    The following Classes of Claims are impaired and entitled to vote on this

Plan:

(i)    Class 3: Class 3 consists of all Senior Secured Notes Claims.

(ii)    Class 4: Class 4 consists of all ETHEX Criminal Fine Claims.

(iii)    Class 5: Class 5 consists of all Qui Tam Claims.

(iv)    Class 6: Class 6 consists of all Convertible Subordinated Notes Claims.

(v)    Class 7: Class 7 consists of all General Unsecured Claims.

(b)    The following Classes of Claims and Interests are impaired and deemed to have rejected this Plan and, therefore, are not entitled to vote on this Plan under section 1126(g) of the Bankruptcy Code:

(i)    Class 8(a): Class 8(a) consists of all Existing Securities Law Claims.

(ii)    Class 8(b): Class 8(b) consists of all Equitably Subordinated Claims.

(iii)    Class 9: Class 9 consists of all Existing KV Interests.

**4.4.**     *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any other Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Plan Distributions.

## ARTICLE V.

## TREATMENT OF CLAIMS AND INTERESTS

**5.1.**     *Priority Non-Tax Claims (Class 1).*

(a)     Treatment: The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to different treatment, on the later of the Effective Date and the first Distribution Date after the applicable Priority Non-Tax Claim becomes an Allowed Claim, or as soon after such date as is reasonably practicable, each holder of an Allowed Priority Non-Tax Claim shall receive Cash from the applicable Reorganized Debtor in an amount equal to such Allowed Claim.

(b)     Voting: The Priority Non-Tax Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

**5.2.**     *Other Secured Claims (Class 2).*

(a)     Treatment: The legal, equitable and contractual rights of the holders of Other Secured Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the first Distribution Date after the applicable Other Secured Claim becomes an Allowed Claim, or as soon after such date as is reasonably practicable, each holder of an Allowed Other Secured Claim shall receive, at the election of the Reorganized Debtors: (i) Cash in an amount equal to such Allowed Claim; or (ii) such other treatment that will render the Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code; provided, however, that Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of the applicable Debtor or Reorganized Debtor, without further notice to or order of the Bankruptcy Court. Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided herein. On the full payment or other satisfaction of such Claims in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)    Voting: The Other Secured Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

(c)    Deficiency Claims: To the extent that the value of the Collateral securing each Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as an Allowed General Unsecured Claim and shall be classified as a General Unsecured Claim.

**5.3.    *Senior Secured Notes Claims (Class 3).***

(a)    Allowance: On the Effective Date, the Senior Secured Notes Claims shall be deemed Allowed Claims in the amount of $231,409,850 and shall not be subject to reduction by the Potential Recharacterization Amount.

(b)    Treatment: On the Effective Date, or as soon as practicable thereafter, each holder of an Allowed Senior Secured Notes Claim shall receive, subject to the terms of this Plan (including, without limitation, Section 7.12 hereof) in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim (and in full satisfaction and discharge of any and all subordination provisions or agreements including the Senior Secured Notes Indenture and the Convertible Subordinated Notes Indenture), its Pro Rata Share of Cash in an aggregate amount equal to (i) the Allowed Senior Secured Notes Claims, (ii) the Postpetition Interest Amount, if any is determined to be owed to the holders of Allowed Senior Secured Notes Claims pursuant to Section 7.11 hereof; and (iii) the Postpetition Accreted OID Amount, if the Postpetition Interest Amount is determined to be owed to the holders of Allowed Senior Secured Notes Claims pursuant to Section 7.11 hereof.

(c)    Voting:  The Senior Secured Notes Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Senior Secured Notes Claims.

**5.4.    *ETHEX Criminal Fine Claims (Class 4).***

(a)    Treatment: Except to the extent that the holder of the ETHEX Criminal Fine Claim agrees to different treatment pursuant to an ETHEX Criminal Fine Settlement Order or as otherwise determined by the Bankruptcy Court in connection with confirmation of this Plan that satisfies section 1129(b) of the Bankruptcy Code, such holder of an Allowed ETHEX Criminal Fine Claim shall receive, subject to the terms of this Plan and in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claims, the ETHEX Criminal Fine Claims Distribution, which shall be paid by Reorganized KV in accordance with the ETHEX Criminal Fine Claims Payment Schedule.

(b)    Voting:  The ETHEX Criminal Fine Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such ETHEX Criminal Fine Claims.

**5.5.**    *Qui Tam Claims (Class 5)*

(a)    <u>Treatment</u>: Except to the extent that a holder of a Qui Tam Claim agrees to different treatment pursuant to a Qui Tam Settlement Order or as otherwise determined by the Bankruptcy Court in connection with confirmation of this Plan that satisfies section 1129(b) of the Bankruptcy Code, such holder of an Allowed Qui Tam Claim shall receive, subject to the terms of this Plan and in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claims, the Qui Tam Claims Distribution, which shall be paid by Reorganized KV in accordance with the Qui Tam Claims Payment Schedule.

(b)    <u>Voting</u>: The Qui Tam Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Qui Tam Claims.

**5.6.**    *Convertible Subordinated Notes Claims (Class 6).*

(a)    <u>Allowance</u>: On the Effective Date, the Convertible Subordinated Notes Claims shall be deemed Allowed Claims in the amount of $201,114,164.

(b)    <u>Treatment</u>: On the Effective Date, or as soon thereafter as reasonably practicable, each holder of an Allowed Convertible Subordinated Notes Claim shall receive, subject to the terms of the Plan and in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claim (and not subject to turnover pursuant to any subordination provision or agreement, including, but not limited to, any such subordination provision set forth in the Convertible Subordinated Notes Indenture) its Pro Rata Share of the Convertible Notes Equity Distribution.

(c)    <u>Voting</u>: The Convertible Subordinated Notes Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Convertible Subordinated Notes Claims.

**5.7.**    *General Unsecured Claims (Class 7).*

(a)    <u>Treatment</u>: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the later of the Effective Date and the first Distribution Date after the applicable General Unsecured Claim becomes an Allowed Claim, or as soon after such date as is reasonably practicable, subject to section 7.14 hereof, if applicable, each holder of an Allowed General Unsecured Claim shall receive such holder's Pro Rata Share of the General Unsecured Claims Distribution; <u>provided</u>, in no event shall such distribution be in excess of 100% of the amount of its Allowed General Unsecured Claim.

(b)    <u>Voting</u>:  The General Unsecured Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan and the votes of such holders will be solicited with respect to such General Unsecured Claims.

**5.8.**    *Existing Securities Law Claims (Class 8(a)).*

(a)    Treatment: Subject to section 7.14 hereof, if applicable, holders of Existing Securities Law Claims shall not receive or retain any distribution under the Plan on account of such Existing Securities Law Claims.

(b)    Voting: The Existing Securities Law Claims are impaired Claims. In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing Securities Law Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Securities Law Claims.

**5.9.**    *Equitably Subordinated Claims (Class 8(b)).*

(a)    Treatment: Subject to section 7.14 hereof, if applicable, holders of Equitably Subordinated Claims shall not receive or retain any distribution under the Plan on account of such Equitably Subordinated Claims.

(b)    Voting: The Equitably Subordinated Claims are impaired Claims. In accordance with section 1126(g) of the Bankruptcy Code, the holders of Equitably Subordinated Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equitably Subordinated Claims.

**5.10.**    *Existing KV Interests (Class 9).*

(a)    Treatment:  Holders of Existing KV Interests shall not receive or retain any distribution under the Plan on account of such Existing KV Interests.

(b)    Voting:  The Existing KV Interests are impaired Interests.  In accordance with Section 1126(g) of the Bankruptcy Code, the holders of Existing KV Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing KV Interests.


**ARTICLE VI.**

**ACCEPTANCE OR REJECTION OF
THE PLAN; EFFECT OF REJECTION BY ONE
OR MORE CLASSES OF CLAIMS OR INTERESTS**

**6.1.**    *Class Acceptance Requirement.*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan.

**6.2.    *Tabulation of Votes on a Non-Consolidated Basis.***

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.  Notwithstanding the foregoing, the Debtors reserve the right to seek to substantively consolidate any two or more Debtors, provided that, such substantive consolidation does not materially and adversely impact the amount of the distributions to any Person under the Plan.

**6.3.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."***

Because certain Classes are deemed to have rejected this Plan, the Debtors will request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Section 14.5 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.  Subject to Section 14.5 of the Plan, the Debtors also reserve the right to request confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

**6.4.    *Elimination of Vacant Classes.***

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**6.5.    *Voting Classes; Deemed Acceptance by Non-Voting Classes.***

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

**6.6.    *Confirmation of All Cases.***

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors; provided, however, that, with the consent of the Investor Parties, the Debtors may at any time waive this Section 6.6.

# ARTICLE VII.

# MEANS FOR IMPLEMENTATION

### 7.1.    *Continued Corporate Existence and Vesting of Assets in Reorganized Debtors.*

(a)    Except as otherwise provided in this Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Certificates of Incorporation and Amended By-Laws of the Reorganized Debtors, for the purposes of satisfying their obligations under the Plan and the continuation of their businesses. On or after the Effective Date, each Reorganized Debtor, in its sole and exclusive discretion, may take such action as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, but not limited to, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor, or its Subsidiary and/or affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's case on the Effective Date or any time thereafter.

(b)    Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estates of the Debtors, including all claims, rights and Causes of Action and any property acquired by the Debtors under or in connection with this Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests. Subject to Section 7.1(a) hereof, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

(c)    On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

**7.2.    *Plan Funding.***

The Cash Distributions under this Plan shall be funded from: (a) the Debtors' Cash on hand as of the Effective Date; (b) the proceeds of the New First Lien Term Loan; (c) the proceeds of the Rights Offering; and the (d) the proceeds from the sale of the Direct Purchase Shares, including under the Share Purchase Agreement.

**7.3.    *Cancellation of Existing Securities and Agreements.***

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth herein, on the Effective Date all agreements, instruments, and other documents evidencing any Claim or Interest, other than Intercompany Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect. Notwithstanding the foregoing, each of the Senior Secured Notes Indenture and Convertible Subordinated Notes Indenture shall continue in effect solely to the extent necessary to allow the Reorganized Debtors, the Senior Secured Notes Indenture Trustee and the Convertible Subordinated Notes Indenture Trustee to make distributions pursuant to this Plan on account of the Senior Secured Notes Claims and Convertible Subordinated Notes Claims, respectively, and to effectuate any charging liens permitted under the Senior Secured Notes Indenture and Convertible Subordinated Notes Indenture, respectively. The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan. Except as provided pursuant to this Plan, each of the Senior Secured Notes Indenture Trustee and the Convertible Subordinated Notes Indenture Trustee and their respective agents, successors and assigns shall be discharged of all of their obligations associated with the Senior Secured Notes and Convertible Subordinated Notes, respectively.

**7.4.    *Cancellation of Certain Existing Security Interests.***

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors (as applicable) any Collateral or other property of either Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

**7.5.    *Officers and Boards of Directors.***

(a)    On the Effective Date, the initial board of directors of each of the Reorganized Debtors shall consist of those individuals identified in a filing to be made with the Bankruptcy Court on or before the date of the Confirmation Hearing.  The initial board of directors of Reorganized KV will consist of seven (7) members, comprised of the Chief Executive Officer of Reorganized KV and six (6) individuals to be designated by the Investor Parties pursuant to the New Stockholders Agreement.  On the Effective Date, the officers of each of the Reorganized Debtors shall be the officers that existed immediately prior to the occurrence

of the Effective Date.  The compensation arrangement for any insider of the Debtors that shall become an officer of a Reorganized Debtor will be disclosed in the Plan Supplement to be filed with the Bankruptcy Court on or before the date of the Confirmation Hearing.

(b)     The members of the board of directors of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such member will be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the directors of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

(c)     Prior to the Effective Date, the Debtors shall purchase a "run off" directors and officers liability policy, which shall (i) be effective as of the Effective Date, (ii) have a six-year coverage period, and (iii) be on terms acceptable to the Debtors and reasonably acceptable to the Investor Parties (the "***Run Off D&O Policy***").

(d)     On the Effective Date, the D&O Claim Committee shall be formed and shall be vested with exclusive authority to act, in its sole discretion, on behalf of the Reorganized Debtors with respect to (i) the administration, negotiation and/or settlement of any Claims asserted under any and all of the Debtors' directors and officers liability insurance policies that are based on pre-Effective Date acts, omissions, events or occurrences and (ii) the administration and distribution of funds from the Current D&O Indemnity Reserve.

### 7.6.   *Management.*

(a)     <u>Management Incentive Plan</u>.  On the Effective Date, the board of directors of Reorganized KV will be required to adopt the Management Incentive Plan.  The New Common Stock Securities issued pursuant to the Management Incentive Plan shall dilute all other New Common Stock to be issued pursuant to this Plan.

(b)     <u>Post-Emergence Bonus Plan</u>.  After the Effective Date, in accordance with the terms of the Post-Emergence Bonus Plan, Reorganized KV will be required to pay the Post-Emergence Bonuses to the Key Employees.

### 7.7.   *Corporate Action.*

(a)     The Reorganized Debtors shall serve on the United States Trustee quarterly reports of the disbursements made until such time as a final decree is entered closing the applicable Reorganization Case or the applicable Reorganization Case is converted or dismissed, or the Bankruptcy Court orders otherwise. Any deadline for filing Administrative Expense Claims shall not apply to fees payable pursuant to section 1930 of title 28 of the United States Code.

(b)     On the Effective Date, the Amended Certificates of Incorporation and Amended By-Laws, and any other applicable corporate organizational documents of each of the Reorganized Debtors shall be amended and restated and deemed authorized in all respects.

(c)    Any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, the issuance of securities and instruments, the implementation of the Management Incentive Plan, or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

(d)    The Debtors and the Reorganized Debtors, shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Bankruptcy Court, corporate, board or shareholder approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or stockholders of the applicable Reorganized Debtor.

**7.8.    *New Stockholders Agreement.***

On the Effective Date, Reorganized KV and all of the holders of New Common Stock of Reorganized KV then outstanding shall be deemed to be parties to the New Stockholders Agreement, substantially in the form contained in the Plan Supplement, <u>without the need for execution by any such holder other than</u> Reorganized KV. The New Stockholders Agreement shall be binding on all parties receiving, and all holders of, New Common Stock of Reorganized KV regardless of whether such parties execute the New Stockholders Agreement.

**7.9.    *Authorization, Issuance and Delivery of New Common Stock.***

(a)    On the Effective Date, Reorganized KV is authorized to issue or cause to be issued the New Common Stock for distribution in accordance with the terms of this Plan and the Amended Certificate of Incorporation of Reorganized KV, without the need for any further corporate or shareholder action. Certificates, if any, of New Common Stock will bear a legend restricting the sale, transfer, assignment or other disposal of such shares, as more fully set forth in the Amended Certificate of Incorporation of Reorganized KV and the New Stockholders Agreement.

(b)    The New Common Stock shall not be registered under the Securities Act of 1933, as amended, and shall not be listed for public trading on any securities exchange, in each case, as of the Effective Date. Distribution of New Common Stock may be made by delivery of one or more certificates representing such shares as described herein, by means of book-entry registration on the books of the transfer agent for shares of New Common Stock or by means of book-entry exchange through the facilities of the DTC in accordance with the customary practices of the DTC, as and to the extent practicable, as provided in Section 8.4(b) hereof.

(c)    In the period pending distribution of the New Common Stock to any holder entitled pursuant to this Plan to receive New Common Stock, such holder shall be

bound by, have the benefit of, and be entitled to enforce the terms and conditions of the New Stockholders Agreement and shall be entitled to exercise any voting rights and receive any dividends or other distributions payable in respect of such holder's New Common Stock (including receiving any proceeds of permitted transfers of such New Common Stock) and to exercise all other rights in respect of the New Common Stock (so that such holder shall be deemed for tax purposes to be the owner of the New Common Stock).

### 7.10. *New First Lien Term Loan.*

On the Effective Date, without any requirement of further action by security holders or directors of the Debtors, each of the Reorganized Debtors shall be authorized to enter into the New First Lien Term Loan Agreement, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of the liens on collateral securing the New First Lien Term Loan.

### 7.11. *Postpetition Interest Amount.*

To the extent the Bankruptcy Court determines any amounts are due and owing in respect of the Postpetition Interest Amount, the Debtors or Reorganized Debtors shall pay the Postpetition Interest Amount and the Postpetition Accreted OID Amount in full in Cash pursuant to Section 7.2 on the Effective Date; for the avoidance of doubt, notwithstanding any other provision set forth herein or any provision of the Convertible Subordinated Notes Indenture or the Senior Secured Notes Indenture, in the event that any Postpetition Interest Amount and Postpetition Accreted OID Amount are determined to be due and owing, such amounts shall not be payable from the Convertible Subordinated Notes Indenture Trustee or any holder of Convertible Subordinated Notes Claims.

### 7.12. *Rights Offering and Direct Purchase.*

(a)   Purpose.  The proceeds of the sale of the Rights Offering Stock and Direct Purchase Shares shall be used to provide up to $275 million in capital to the Reorganized Debtors, which shall be available to fund payments required under this Plan and for ordinary course operations and general corporate purposes of the Reorganized Debtors.

(b)   Rights Offering.  In accordance with the Rights Offering Procedures and the Stock Purchase Agreement, each Eligible Holder (including each Investor Party) that timely votes to accept the Plan shall receive Subscription Rights to acquire its respective Rights Offering Pro Rata Stock Amount of Rights Offering Stock pursuant to the terms set forth in this Plan and in the Rights Offering Procedures.  With respect to each Eligible Holder that timely votes to accept the Plan, each Subscription Right shall represent the right to acquire one share of Rights Offering Stock for the Rights Exercise Price.  The total number of shares of Rights Offering Stock to be issued in connection with the Rights Offering will be 11,900,000.

(c)   Direct Purchase.  On the Effective Date, the Debtors shall issue and sell to the Investor Parties and Silver Point, and the Investor Parties and Silver Point shall purchase, the Direct Purchase Shares, in each case in accordance with the terms and conditions set forth in the Stock Purchase Agreement or the Share Purchase Agreement, as applicable. Notwithstanding anything to the contrary contained herein, if Silver Point or any Investor Party fails to purchase

any Direct Purchase Shares (pursuant to the Stock Purchase Agreement or the Share Purchase Agreement, as applicable), the Debtors shall reduce distributions under this Plan to each such Party in respect of its Allowed DIP Claims, if any, in an amount equal to the aggregate amount of its Unfunded Direct Purchase Obligation.  Notwithstanding anything to the contrary contained herein, if the amount of Silver Point's Allowed DIP Claims related distributions is less than the aggregate amount of its Unfunded Direct Purchase Obligation, then, in accordance with the Share Purchase Agreement, the Debtors shall additionally reduce distributions under this Plan to Silver Point in respect of Silver Point's Allowed Senior Secured Notes Claims such that the aggregate amount so reduced equals the aggregate amount of the remaining Unfunded Direct Purchase Obligation.

(d)    Backstop Commitment.  (i) Pursuant to the Stock Purchase Agreement, each of the Investor Parties (other than Kingdon) shall be obligated, severally not jointly, and subject to the terms, conditions and limitations set forth in the Stock Purchase Agreement, to purchase its applicable portion of Unsubscribed Shares (as set forth in the Stock Purchase Agreement);  (ii) Pursuant to the Share Purchase Agreement, Silver Point shall be obligated, subject to the terms, conditions and limitations set forth in the Share Purchase Agreement, to purchase its applicable portion of Unsubscribed Shares (as set forth in the Share Purchase Agreement).  Notwithstanding anything to the contrary contained herein, if Silver Point should fail to purchase any of its portion of Unsubscribed Shares (pursuant to the Share Purchase Agreement), the Debtors shall reduce distributions under this Plan to Silver Point in respect of Silver Point's Allowed DIP Claims in an amount equal to the aggregate amount of the Unfunded Backstop Obligation.  Notwithstanding anything to the contrary contained herein, if the amount of such Allowed DIP Claims related distributions is less than the aggregate amount of the Unfunded Backstop Obligation, then the Debtors shall additionally reduce distributions under this Plan to Silver Point in respect of Silver Point's Allowed Senior Secured Notes Claims such that the aggregate amount so reduced equals the aggregate amount of the remaining Unfunded Backstop Obligation; and (iii) Pursuant to the PSA, each member of the Participating Ad Hoc Group shall be obligated, severally not jointly, and subject to the terms, conditions and limitations set forth in the PSA, to purchase its applicable portion of Unsubscribed Shares (as set forth in the PSA).

(e)    Commitment Fee.  In consideration for the obligations described in Sections 7.12(c) and (d) above, on the Effective Date, Reorganized KV shall issue to the Investor Parties, Silver Point and the members of the Participating Ad Hoc Group, as applicable, the Commitment Fee Shares (without payment of any additional consideration therefor) pursuant to the terms of the Stock Purchase Agreement, the Share Purchase Agreement or the PSA, as applicable.

## 7.13.    *Intercompany Interests.*

No Intercompany Interests shall be cancelled pursuant to this Plan, and all Intercompany Interests shall continue in place following the Effective Date, solely for the purpose of maintaining the existing corporate structure of the Debtors and the Reorganized Debtors.

**7.14.**    *Insured Claims.*

Notwithstanding anything to the contrary contained herein (but subject to Section 12.12(b) hereof), to the extent the Debtors have insurance with respect to any Allowed General Unsecured Claim, Allowed Existing Securities Law Claim or Allowed Equitably Subordinated Claim, the holder of such Allowed Claim shall (i) have an Allowed Claim in its applicable Class for any SIR Claim, (ii) be paid any amount in excess of any SIR Claim from the proceeds of insurance to the extent that the Claim is insured, and (iii) to the extent not duplicative of (i), receive the treatment provided for in this Plan to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Claim.

**7.15.**    *Comprehensive Settlement of Claims and Controversies.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtors, the Reorganized Debtors, and their respective Estates and property, and of holders of Claims or Interests; and (b) fair, equitable and reasonable.

**7.16.**    *Equitably Subordinated Claims.*

(a)    Upon entry of the Confirmation Order, any Equitably Subordinated Claims not previously equitably subordinated pursuant to a Final Order of the Bankruptcy Court and that are subject to an objection filed by the Debtors at least seven (7) days prior to the Voting Deadline shall be deemed equitably subordinated pursuant to section 510(c) of the Bankruptcy Code. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the date of such entry, of such equitable subordination.

(b)    To the extent the Hermelin Claims are determined by Final Order not to be properly classified as Class 8(b) Equitably Subordinated Claims, such Claims shall be classified as Class 7 General Unsecured Claims and Disallowed in full based on, among other things, the Debtors' allegations in that certain action captioned *K-V Pharmaceutical Company v. Hermelin*, Case No. 11SL-CC04054, pending in the Circuit Court of St. Louis County, State of Missouri; provided, that to the extent the Debtors have insurance coverage for the Hermelin Indemnification Claims, such Hermelin Indemnification Claims shall be satisfied from the proceeds of such insurance in accordance with Section 7.14 hereof.

(c)    To the extent the Hermelin Claims are determined by Final Order not to be (i) properly classified as Class 8(b) Equitably Subordinated Claims or (ii) Disallowed in full, then such Claims shall be Allowed as Class 7 General Unsecured Claims in an aggregate amount not to exceed $40,466.51, and receive the treatment provided under Section 5.7 hereof; provided, that notwithstanding the foregoing, to the extent the Debtors have insurance coverage for the

Hermelin Indemnification Claims, such Hermelin Indemnification Claims shall be satisfied from the proceeds of such insurance in accordance with Section 7.14 hereof.

## ARTICLE VIII.

## DISTRIBUTIONS

**8.1.**    *Distributions.*

The Disbursing Agent shall make all Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan. To the extent provided in the Senior Secured Notes Indenture and Convertible Subordinated Notes Indenture, as applicable, and permitted by applicable law, all Plan Distributions made by the Disbursing Agent to Class 3 (Senior Secured Notes Claims) and Class 6 (Convertible Subordinated Notes Claims) shall be subject to any charging liens in favor of the Senior Secured Notes Indenture Trustee and Convertible Subordinated Notes Indenture Trustee, respectively.

**8.2.**    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**8.3.**    *Date of Distributions.*

Unless otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable, provided that the Reorganized Debtors may utilize periodic distribution dates to the extent appropriate. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**8.4.**    *Distribution Record Date.*

(a)    As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes (other than Classes 3 and 6), as maintained by the Debtors, or their agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' executory contracts and leases, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the underlying executory contract or lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount.

(b)    Notwithstanding the foregoing or anything herein to the contrary, in connection with any distribution under this Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), including to holders of Claims in Classes 3 and 6, the Debtors will be entitled to recognize and deal for all purposes under the Plan with such holders to the extent consistent with the customary practices of DTC used in connection with such distribution. With respect to the New Common Stock to be distributed to holders of Allowed Convertible Subordinated Notes Claims, all of the shares of the New Common Stock shall be issued in the name of such holder or its nominee(s) in accordance with DTC's book-entry exchange procedures, provided, that such shares of New Common Stock are permitted to be held through DTC's book-entry system; provided that to the extent the New Common Stock is not eligible for distribution in accordance with DTC's customary practices, Reorganized KV will take all such reasonable actions as may be required to cause distributions of New Common Stock to holders of Allowed Convertible Subordinated Notes Claims.

### 8.5.    *Disbursing Agent.*

All distributions under this Plan shall be made by the Reorganized Debtors or the Disbursing Agent on and after the Effective Date as provided herein. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by Reorganized Debtors. Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

### 8.6.    *Delivery of Distribution.*

Subject to Section 8.4(b) of the Plan, the Disbursing Agent will issue, or cause to be issued, and authenticate, as applicable, the applicable Plan Consideration, and subject to Bankruptcy Rule 9010, make all distributions or payments to any holder of an Allowed Claim as and when required by this Plan at: (a) the address of such holder on the books and records of the Debtors or their agents; or (b) at the address in any written notice of address change delivered to the Debtors or the applicable Disbursing Agent, including any addresses included on any filed proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001. In the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the applicable Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest, provided, however, such distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of one year from: (i) the Effective Date; and (ii) the first Distribution Date after such holder's Claim is first Allowed.

### 8.7.    *Unclaimed Property.*

One year from the later of: (i) the Effective Date, and (ii) the first Distribution Date after the applicable Claim is first Allowed, all unclaimed property or interests in property shall revert to the Reorganized Debtors or the successors or assigns of the Reorganized Debtors,

and the Claim of any other holder to such property or interest in property shall be discharged and forever barred. The Reorganized Debtors and the Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records, or proofs of Claim filed against the Debtors, as reflected on the claims register maintained by the Claims Agent.

### 8.8.    *Satisfaction of Claims.*

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

### 8.9.    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Debtors or Reorganized Debtors (as applicable), any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 8.10.    *Fractional Shares/De Minimis Cash Distributions.*

No fractional shares of New Common Stock shall be distributed. When any distribution would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the shares of the New Common Stock subject to such distribution will be rounded to the next higher or lower whole number as follows: (i) fractions equal to or greater than ½ will be rounded to the next higher whole number; and (ii) fractions less than ½ will be rounded to the next lower whole number; <u>provided</u>, that the foregoing shall not apply to any rounding of Rights Offering Stock to be distributed, which shall be governed by the Rights Offering Procedures and Section 7.12(c) of this Plan. The total number of shares of New Common Stock to be distributed on account of Allowed Claims will be adjusted as necessary to account for the rounding provided for in this Plan. No consideration will be provided in lieu of fractional shares that are rounded down. Neither the Reorganized Debtors nor the Disbursing Agent shall have any obligation to make a distribution that is less than one (1) share of New Common Stock or $50.00 in Cash. Fractional shares of New Common Stock that are not distributed in accordance with this Section 8.10 shall be returned to Reorganized KV.

### 8.11.    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution (of a value set forth herein) in excess of the Allowed amount of such Claim plus any postpetition interest on such Claim, to the extent such interest is permitted by Section 8.2 of this Plan.

### 8.12.    *Exemption from Securities Laws.*

The issuance of and the distribution under the Plan of the New Common Stock Securities, including the Subscription Rights, the Rights Offering Stock, the Direct Purchase Shares, the Commitment Fee Shares, and the Convertible Subordinated Notes Equity

Distribution, shall be exempt from registration under the Securities Act any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code and/or Section 4(a)(2) of the Securities Act and Regulation D promulgated thereunder, to the maximum extent permitted thereunder.   Subject to any transfer restrictions contained in the Certificate of Incorporation of Reorganized KV and/or the New Stockholders Agreement, the New Common Stock issued on account of the Convertible Subordinated Notes Equity Distribution may be resold by the holders thereof without restriction, except to the extent that any such holder is deemed to be an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code.  All of the New Common Stock Securities other than the Convertible Subordinated Notes Equity Distribution may not be sold or transferred unless there is an effective registration statement under the Securities Act covering the New Common Stock or the securities are sold or transferred in a transaction that is exempt from or not subject to the registration and prospectus delivery requirement of the Securities Act and otherwise in compliance with state securities laws.  The availability of the exemption under section 1145 of the Bankruptcy Code, Section 4(a)(2) of the Securities Act and/or any other applicable securities laws shall not be a condition to occurrence of the Effective Date of the Plan.

### 8.13.    *Setoffs and Recoupments.*

Each Reorganized Debtor, or such entity's designee as instructed by such Reorganized Debtor, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim (other than a Senior Secured Notes Claim or a Convertible Subordinated Notes Claim), and the distributions to be made pursuant to this Plan on account of such Allowed Claim, any and all claims, rights and Causes of Action that a Reorganized Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the non-allowance of any Claim hereunder will constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights and Causes of Action that a Reorganized Debtor or its successor may possess against such holder.

### 8.14.    *Rights and Powers of Disbursing Agent.*

(a)    *Powers of Disbursing Agent.* The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    *Expenses Incurred on or After the Effective Date.* Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, reasonable attorney and other

professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

### 8.15. *Withholding and Reporting Requirements.*

In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors, Reorganized Debtors or the Disbursing Agent believe are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (i) each holder of an Allowed Claim that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (ii) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtors' satisfaction, established an exemption therefrom.

### 8.16. *Cooperation with Disbursing Agent.*

The Reorganized Debtors shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of holders of Claims, in each case, as set forth in the Debtors' and/or Reorganized Debtors' books and records. The Reorganized Debtors will cooperate in good faith with the Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 8.15 hereof.

### 8.17. *Hart-Scott Rodino Antitrust Improvements Act.*

Any New Common Stock to be distributed under the Plan to an entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such entity shall have expired or been terminated. In the event any applicable notification and waiting periods do not expire without objection, the Reorganized Debtors or their agent shall, in their sole discretion, be entitled to sell such entity's shares of New Common Stock that were to be distributed under the Plan to such entity, and thereafter shall distribute the proceeds of the sale to such entity.

# ARTICLE IX.

## PROCEDURES FOR RESOLVING CLAIMS

**9.1.**    *Objections to Claims.*

Other than with respect to Fee Claims, only the Reorganized Debtors shall be entitled to object to Claims after the Effective Date. Any objections to those Claims (other than Administrative Expense Claims), shall be served and filed on or before the later of: (i) the date that is one (1) year after the Effective Date; and (ii) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) hereof. Any Claims filed after the Bar Date or Administrative Bar Date, as applicable, shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors or the Reorganized Debtors, unless the Person or entity wishing to file such untimely Claim has received Bankruptcy Court authority to do so. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (iii) if counsel has agreed to or is otherwise deemed to accept service, by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Reorganization Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

**9.2.**    *Amendment to Claims.*

From and after the Effective Date, no Claim may be filed to increase or assert additional claims not reflected in an already filed Claim (or Claim scheduled, unless superseded by a filed Claim, on the applicable Debtor's schedules of assets and liabilities filed in the Reorganization Cases) asserted by such claimant and any such Claim shall be deemed disallowed and expunged in its entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors or the Reorganized Debtors unless the claimant has obtained the Bankruptcy Court's prior approval to file such amended or increased Claim.

**9.3.**    *Disputed Claims.*

(a)    No Distributions or Payments Pending Allowance. Except as provided in this Section 9.3, Disputed Claims shall not be entitled to any Plan Distributions unless and until such Claims become Allowed Claims.

(b)    Establishment of Disputed Priority Claims Reserve. On the Effective Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors shall set aside and reserve, for the benefit of each holder of a Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Non-Tax Claim, and Disputed Other Secured Claim, Cash in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court

pursuant to an Estimation Order, (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtors, or (iii) if no Estimation Order has been entered with respect to such Claim, and no objection to such Claim is pending on the Effective Date, (A) the amount listed in the Debtors' schedules of assets and liabilities filed in the Reorganization Cases (the "***Schedules***") or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable. The Reorganized Debtors, in their reasonable discretion, may increase the amount reserved as to any particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "***Disputed Priority Claims Reserve***".

(c)       Establishment of Disputed General Unsecured Claims Reserve. On the Effective Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors shall set aside and reserve, from the General Unsecured Claims Distribution, for the benefit of each holder of a Disputed General Unsecured Claim, Cash in an amount equal to the Plan Distribution to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order, (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtors, or (iii) if no Estimation Order has been entered with respect to such Claim, and no objection to such Claim is pending on the Effective Date, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable.  The Reorganized Debtors, in their discretion, may increase the amount reserved as to any particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "***Disputed General Unsecured Claims Reserve***".  For the avoidance of doubt, the Debtors shall not be required to reserve any Cash or other consideration on account of any Disputed General Unsecured Claim the Debtors reasonably believe is covered by insurance; provided, that, notwithstanding the foregoing, the Reorganized Debtors shall reserve Cash in an amount equal to the Plan Distribution to which the holder of any such Disputed General Unsecured Claim would be entitled on account of any SIR Claim that would be Allowed if such Disputed General Unsecured Claim were an Allowed Claim, in the amount of such SIR Claim; provided that the amount of the Disputed General Unsecured Claims Reserve shall be determined in consultation with the Creditors' Committee.

(d)       Plan Distributions to Holders of Subsequently Allowed Claims. On each Distribution Date (or such earlier date as determined by the Reorganized Debtors or the Disbursing Agent in their sole discretion but subject to this Section 9.3), the Disbursing Agent will make distributions or payments from the applicable Disputed Claims Reserve on account of any Disputed Claim that has become an Allowed Claim since the occurrence of the previous Distribution Date. The Disbursing Agent shall distribute in respect of such newly Allowed Claims the Plan Distributions to which holders of such Claims would have been entitled under this Plan if such newly Allowed Claims were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees, or other direct costs of maintaining Plan Consideration on account of such Disputed Claims.

    (e)    <u>Distribution of Reserved Plan Consideration Upon Disallowance</u>.

        (i)    To the extent any Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, or Disputed Other Secured Claim has become Disallowed in full or in part (in accordance with the procedures set forth in the Plan), any Plan Consideration held by the Reorganized Debtors on account of, or to pay, such Disputed Claim shall become the sole and exclusive property of Reorganized KV or its successors or assigns.

        (ii)    After all Disputed General Unsecured Claims have been either Allowed or Disallowed, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of any Cash remaining in the Disputed General Unsecured Claims Reserve.

### 9.4.    *Estimation of Claims.*

The Debtors and/or Reorganized Debtors may request that the Bankruptcy Court enter an Estimation Order with respect to any Claim, pursuant to section 502(c) of the Bankruptcy Code, for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the allowed amount of such Claim at any time. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, resolved or withdrawn by any mechanism approved by the Bankruptcy Court.

### 9.5.    *Expenses Incurred On or After the Effective Date.*

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by any Professional Person or the Claims Agent on or after the Effective Date in connection with implementation of this Plan, including without limitation, reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Reorganized Debtors.

# ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.    *General Treatment.***

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases identified on the Schedule of Assumed Contracts and Leases in the Plan Supplement shall be deemed assumed, and all other executory contracts and unexpired leases of the Debtors shall be deemed rejected, except that: (i) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; and (ii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as is determined by a Final Order of the Bankruptcy Court resolving such motion. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions and rejections described in this Section 10.1 pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Section 10.1 shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.

**10.2.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

All Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as General Unsecured Claims. Upon receipt of the Plan Distribution provided in Section 5.7 of the Plan, all such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective properties or interests in property.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors on or before the date that is thirty (30) days after the effective date of such rejection (which may be the Effective Date, the date on which the Debtors reject the applicable contract or lease as provided in Section 10.3(c) below, or pursuant to an order of the Bankruptcy Court).

**10.3.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.***

(a)    Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease, any monetary defaults arising under each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "***Cure Amount***") in Cash on the later of thirty (30) days after: (i) the

Effective Date; or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

(b)    No later than ten (10) calendar days prior to the commencement of the Confirmation Hearing, the Debtors shall file a schedule (the "*Cure Schedule*") setting forth the Cure Amount, if any, for each executory contract or unexpired lease to be assumed pursuant to Section 10.1 of the Plan, and serve such Cure Schedule on each applicable counterparty. Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within fifteen (15) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the applicable Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

(c)    In the event of a dispute (each, a "*Cure Dispute*") regarding: (i) the Cure Amount; (ii) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption. To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that such Debtor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor or Reorganized Debtor, as applicable, such Debtor or Reorganized Debtor, as applicable, may reject the applicable executory contract or unexpired lease after such determination.

### 10.4.    *Compensation and Benefit Programs.*

Except as otherwise expressly provided hereunder, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their respective employees, retirees and non-employee directors including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans are treated as executory contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.  Each of the Reorganized Debtors may, prior to the Effective Date and with the consent of the Investor Parties, enter into employment agreements with employees that become effective on or prior to the Effective Date and survive consummation of this Plan. Any such agreements (or a summary of the material terms thereof) will be included in the Plan Supplement or otherwise filed with the Bankruptcy Court on or before the date of the Confirmation Hearing.

### 10.5.    *Employment Agreements.*

Notwithstanding anything to the contrary contained herein, all employment agreements between the Debtors and their executive officers as of the Effective Date (the

"*Current Officer Employment Agreements*") are treated as executory contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

**11.1.   *Conditions Precedent to Confirmation.***

Confirmation of this Plan is subject to:

(a)      the order approving the Stock Purchase Agreement becoming a Final Order;

(b)      the Disclosure Statement having been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code;

(c)      entry of the Confirmation Order; and

(d)      the Bankruptcy Court having entered an order, which may include the Confirmation Order, determining the Postpetition Interest Amount (if any), including the calculation for determining such Postpetition Interest Amount.

**11.2.   *Conditions Precedent to the Effective Date.***

The occurrence of the Effective Date is subject to:

(a)      the Confirmation Order having become a Final Order;

(b)      the Plan Documents being executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(c)      all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents in connection with the Plan, if any, having been obtained and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

(d)      the New First Lien Term Loan Agreement and all related documents provided for therein or contemplated thereby having been duly and validly executed and delivered by all parties thereto and consummated, and being in full force and effect (with all conditions precedent to such agreement having occurred or otherwise been satisfied or waived);

(e)       the Amended Certificates of Incorporation shall have been filed with the applicable authorities of the relevant jurisdictions of incorporation and shall have become effective in accordance with such jurisdictions' corporation laws; and

(f)       the Stock Purchase Agreement and Rights Offering and transactions contemplated thereby shall have been consummated, and all fees and expenses payable to the Investor Parties pursuant to the Stock Purchase Agreement and to Silver Point pursuant to the Share Purchase Agreement shall have been paid in full.

**11.3.    *Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.***

(a)       The condition precedent set forth in Section 11.1(d) may only be waived if each of (i) the Debtors, (ii) the Investor Parties, (iii) the Participating Ad Hoc Group, (iv) Varana, (v) Telemetry, and (vi) Silver Point consents in writing to a waiver thereof.

(b)       In addition to Section 11.3(a), in the event that the waiver of a condition precedent set forth in Section 11.1 or Section 11.2 would have a material adverse effect on Silver Point, each such waiver shall require the prior written consent of Silver Point.

(c)       Subject to 11.3(a), the Debtors, with the consent of the Investor Parties, shall have the right to waive any condition precedent set forth in Section 11.2 of this Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan. Further, the stay of the Confirmation Order, pursuant to Bankruptcy Rule 3020(e), shall be deemed waived by the Confirmation Order.

(d)       If any condition precedent to the Effective Date is waived pursuant to this Section 11.3 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of this Plan shall foreclose any ability to challenge this Plan in any court.

**11.4.    *Postpetition Interest Amount Escrow.***

In the event that the Bankruptcy Court order required to be entered pursuant to Section 11.1(d) has not become a Final Order on or before the Effective Date, the Debtors shall deposit into escrow an amount of Cash equal to the full amount of the Postpetition Interest Amount plus the Postpetition Accreted OID Amount.  Such escrowed funds will be released consistently with the Final Order pertaining to the determination of the Postpetition Interest Amount, if any.

**11.5.    *Effect of Failure of Conditions.***

If all of the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived (as provided in Section 11.3 above) on or before the first Business Day that is more than 60 days after the Confirmation Date, or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, then the Debtors may file a motion to vacate the Confirmation Order before all of the conditions have been satisfied or duly waived. Notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in

Section 11.2 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 11.4, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no distributions under this Plan shall be made, the Debtors and all holders of Claims and Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other entity with respect to any matter set forth in the Plan.

**ARTICLE XII.**

**EFFECT OF CONFIRMATION**

### 12.1.  *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

### 12.2.  *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan, the property of each Estate shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other Interests, except as provided herein or in the Confirmation Order. The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 12.3.  *Discharge of Claims Against and Interests in the Debtors.*

(a)  <u>Generally</u>. Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each Person that is a holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or

asserting any such discharged Claim against or terminated Interest in any Debtor or any Reorganized Debtor.

(b)    <u>Claims Related to Non-Debtor Affiliates and Subsidiaries</u>. Upon the Effective Date, all Claims and Causes of Action against any Debtor related to or arising from any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to a non-Debtor affiliate and/or Subsidiary of the Debtors, shall receive the classification and treatment provided for such Claims in the Plan and shall be discharged and all holders thereof forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim and Cause of Action against any Reorganized Debtor.

### 12.4.    *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.5.    *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### 12.6.    *Injunction.*

(a)    *Except as otherwise provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons (iv)*

*acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.*

(b)    By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the Injunctions set forth in this Section.

### 12.7.    *Releases.*

(a)    *Releases by the Debtors. For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Debtors and Reorganized Debtors, in their individual capacities and as debtor in possession, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or Reorganized Debtors to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, their affiliates and former affiliates, the Reorganized Debtors, the parties released pursuant to this Section 12.7, the Reorganization Cases, or this Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates or Reorganized Debtors, whether directly, indirectly, derivatively or in any representative or any other capacity.*

(b)    *Releases by Holders of Claims and Interests. Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date: (i) each of the Released Parties; (ii) each holder of a Claim or Interest entitled to vote on this Plan that did not "opt out" of the releases provided in Section 12.7 of the Plan in a timely submitted Ballot; and (iii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims and Interests, in consideration for the obligations of the Debtors and Reorganized Debtors under this Plan, the New Common Stock Securities, the New First Lien Term Loan, the Subscription Rights and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, and each entity (other than the Debtors) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and deemed to forever release, waive and discharge all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in*

*law, equity or otherwise that are* **based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, their affiliates and former affiliates, the Reorganized Debtors, the Reorganization Cases, or this Plan or the Disclosure Statement**. *Without limiting the foregoing and for the avoidance of doubt, each of (w) the holders of Senior Secured Notes Claims, (x) the holders of Convertible Subordinated Notes Claims, (y) the Senior Secured Notes Indenture Trustee, and (z) the Convertible Subordinated Notes Indenture Trustee hereby forever releases, waives and discharges all claims, demands, debts, rights, Causes of Action or liabilities that it has or may have against any Released Party arising under the Senior Secured Notes Indenture or the Convertible Subordinated Notes Indenture including with respect to any (A) make-whole amount or similar type of prepayment premium, right or obligation,(B) subordination obligations of the Convertible Subordinated Notes Indenture Trustee and the holders of the Convertible Subordinated Notes Claims, and (C) fees, expenses or other amounts paid to the Convertible Subordinated Notes Indenture Trustee, the Senior Secured Notes Indenture Trustee and any holder of a Convertible  Subordinated Notes Claim, a Senior Secured Notes Claim, or any such holder's legal advisor at any time in connection with the restructuring of the Debtors and this Plan.*

(c)     *Notwithstanding anything to the contrary contained herein: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 12.7 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code, or (y) any criminal laws of the United States or any state, city or municipality; and (ii) the releases set forth in this Section 12.7 shall not release any (x) Debtor's claims, right, or Causes of Action for money borrowed from or owed to a Debtor or its Subsidiary by any of its directors, officers or former employees, as set forth in such Debtors' or Subsidiary's books and records, (y) any claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives and (z) claims against any Person arising from or relating to such Person's gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.*

(d)     *Notwithstanding anything to the contrary contained herein, nothing herein: (i) discharges, releases, or precludes any (a) environmental liability that is not a Claim; (b) environmental claim of the United States that first arises on or after the Confirmation Date, or (c) other environmental claim or environmental liability that is not otherwise dischargeable under the Bankruptcy Code; (ii) releases the Debtors or Reorganized Debtors from any environmental liability that a Debtor or Reorganized Debtor may have as an owner or operator of real property owned or operated by a Debtor or Reorganized Debtor on or after the Confirmation Date; (iii) releases or precludes any environmental liability to the United States on the part of any Persons other than the Debtors and Reorganized Debtors; or (iv) enjoins the United States from asserting or enforcing any liability described in this paragraph.*

### 12.8.   *Exculpation and Limitation of Liability.*

*None of the Released Parties, or the D&O Claim Committee or any member thereof (each solely in their capacity as such), shall have or incur any liability to any holder of any Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation, the negotiation, implementation and execution of this Plan, the Reorganization Cases, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.*

### 12.9.   *Injunction Related to Releases and Exculpation.*

*The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Sections 12.7 and 12.8 of this Plan.*

### 12.10.   *Termination of Subordination Rights and Settlement of Related Claims.*

(a)      Except as expressly provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions, treatments and other provisions under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(a) and 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to the Plan. Any holder of a Claim (other than a Senior Secured Notes Claim) that constitutes "Senior Indebtedness" (as defined in the Convertible Subordinated Notes Indenture) entitled to the benefit of the subordination provisions contained in Article XI of the Convertible Subordinated Notes Indenture must assert any objection to the treatment of its subordination rights under the Plan on or prior to the deadline to object to the Plan.  Any disagreement with the priorities or distributions set forth in the Plan or any right to assert contractual subordination under the Convertible Subordinated Notes Indenture, including in respect of claims of "Senior Indebtedness," shall be raised on or prior to the deadline to object to the Plan, and decided at or prior to the Confirmation Hearing, and all issues with respect to contractual subordination not raised or resolved at the Confirmation

Hearing shall be governed pursuant to the Plan or, if the decision of the Bankruptcy Court at the Confirmation Hearing differs from the Plan, then such decision shall govern.

(b)      Pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the subordination rights that a holder of a Claim or Interest may have or any distribution to be made pursuant to this Plan on account of such Claim or Interest. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, the Reorganized Debtors, their respective properties, and holders of Claims and Interests, and is fair, equitable and reasonable.

### 12.11.  *Retention of Causes of Action/Reservation of Rights.*

Subject to Section 12.7 of this Plan, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Reorganization Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Section 4.2 herein, may be asserted after the Confirmation Date to the same extent as if the Reorganization Cases had not been commenced.

### 12.12.  *Indemnification Obligations; Insured Current Director & Officer Claims.*

(a)      Notwithstanding anything to the contrary contained herein, subject to the occurrence of the Effective Date, and solely to the extent of (i) applicable insurance proceeds and (ii) the Current D&O Indemnity Reserve, the obligations of the Debtors to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who were directors or officers of any of the Debtors at any time after the Petition Date, against any Causes of Action or Claims, remain unaffected thereby after the Effective Date and are not discharged.  On and after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies in effect on the Petition Date, including the Run Off D&O Policy, and all directors and officers of the Debtors at any time after the Petition Date shall be entitled to the full benefits of any such policy for the full term of such policy, regardless of whether such director and/or officers remain in such positions after the Effective Date.  From the Effective Date, the Debtors shall cooperate with any Person that served as a director or officer of a Debtor at any time on and after the Petition Date, and make available to any such Person, subject to applicable confidentiality and privilege concerns, such documents, books, records or information relating to the Debtors' activities prior to the Effective Date that such Person may reasonably require in connection with the defense or preparation for the defense of any claim against such Person relating to any action taken in connection with such Person's role as a director or officer of a Debtor.

(b)        On and after the Effective Date, any Person that served as a director or officer of a Debtor at any time on and after the Petition Date shall be entitled on a first-priority basis access to proceeds of any available insurance policy of the Debtors as set forth in section 12.12(a) to the extent permissible by applicable law.

(c)        Notwithstanding anything to the contrary contained herein, but subject to Section 7.14 hereof, as of the Effective Date, any obligation of the Debtors to indemnify, defend, reimburse, advance fees and expenses to, or limit the liability of any director or officer who was not a director or officer of any of the Debtors at any time after the Petition Date, against any Causes of Action or Claims, whether in contract, under state law, pursuant to any of the Debtor's by-laws or other corporate documents of the Debtors, or otherwise, shall be discharged. To the extent any such obligations arise under or constitute executory contracts, such executory contracts shall be deemed rejected as of the Effective Date, notwithstanding anything to the contrary herein.

### 12.13. *Securities Litigations; Document Retention.*

(a)        Notwithstanding anything in the Plan to the contrary (including but not limited to in Article XII of the Plan), but excluding any and all derivative Claims on behalf of the Debtors, nothing in the Plan shall release, enjoin or otherwise affect in any way any right or ability of the lead plaintiff, any other plaintiff and/or any member of the putative classes in the Securities Litigations to: (i) seek or obtain any discovery in connection with the respective Securities Litigations, (ii) pursue and prosecute the claims asserted, or which may be asserted, against any non-Debtor in the respective Securities Litigations; (iii) enter into or enforce any settlement or enforce any judgment obtained against any non-Debtor in connection with or relating to the respective Securities Litigations, including through coverage provided by any insurance and/or any proceeds therefrom; and (iv) pursue and recover on any claims against KV as a defendant in the respective Securities Litigations solely to the extent of any insurance and/or any proceeds therefrom (excluding any self-insured retention obligation or deductible) that may provide coverage for any liability of KV for the claims asserted in the respective Securities Litigations.

(b)        Notwithstanding confirmation of the Plan, and notwithstanding anything in the Plan to the contrary, from and after the Effective Date, (i) the Reorganized Debtors shall preserve and maintain all of the Debtors' and the Reorganized Debtors' documents, files, books, records, and electronic data (including emails) that relate to the claims, defenses and allegations in the respective Securities Litigations (collectively, the "Securities Litigation Documents") whether maintained by the Debtors or the Reorganized Debtors, or any successors thereto or transferees thereof, to the extent required under applicable law, including without limitation under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, et. seq. and 15 U.S.C. § 78u-4(b)(3)(C) thereof, and (ii) nothing shall restrict or impair any right of the lead plaintiffs and/or any representative of the putative classes in the respective Securities Litigations to seek leave under 15 U.S.C. § 78u-4(b)(3)(B) or otherwise, to require any or all of the Debtors or the Reorganized Debtors to preserve Securities Litigation Documents until, with respect to (i) and (ii) above, such time as, in each case with respect to the applicable Securities Litigation:  (I) a final, non-appealable judgment is entered concluding such litigation in full, or (II) such litigation is fully and finally settled.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Reorganization Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the Cure Disputes resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all Fee Claims;

(j)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any

transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To resolve any disputes concerning whether a Person or entity had sufficient notice of the Reorganization Cases, the Disclosure Statement Hearing, the Confirmation Hearing, any applicable Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)     To recover all Assets of the Debtors and property of the Estates, wherever located; and

(r)     To resolve any disputes regarding the subordination provisions or agreements contained in the Convertible Subordinated Notes Indenture; and

(s)     To enter a final decree closing each of the Reorganization Cases.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1.   *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by applicable law, all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under this Plan, the sale by the Debtors of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 14.2.    *Retiree Benefits.*

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits (within the meaning of, and subject to the limitations of, section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which either Debtor had obligated itself to provide such benefits. Nothing herein shall: (i) restrict the Debtors' or the Reorganized Debtors' right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or section 1114(m) of the Bankruptcy Code; or (ii) be construed as an admission that any such retiree benefits are owed by the Debtors.

### 14.3.    *Dissolution of Creditors' Committee*.

The Creditors' Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member (including each officer, director, employee or agent thereof) of the Committee and each professional retained by the Committee shall be released and discharged from all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, their membership on the Creditors' Committee, the Plan or the Reorganization Cases, *except* with respect to: (i) any matters concerning any Fee Claims held or asserted by any professionals retained by the Committee; or (ii) any appeals of the Confirmation Order, or any appeal relating to the Postpetition Interest Amount, through the date such appeals are finally decided, settled, withdrawn or otherwise resolved.

### 14.4.    *Termination of Professionals.*

On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee, if any, shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Reorganized Debtors shall be responsible for the fees, costs and expenses associated with the prosecution of such Fee Claims. Nothing herein shall preclude any Reorganized Debtor from engaging a Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.5.    *Amendments.*

(a)      *Plan Modifications.* This Plan may be amended, modified, or supplemented by the Debtors, with the consent of the Investor Parties, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court; notwithstanding the foregoing, this Plan shall not be amended in a manner that is materially adverse to Silver Point without Silver Point's prior written consent.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this

Plan, the Debtors may, with the consent of the Investor Parties, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    *Other Amendments.* Prior to the Effective Date, the Debtors may, with the consent of the Investor Parties, make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that, such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

### 14.6.    *Revocation or Withdrawal of this Plan.*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date.  If the Debtors revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

### 14.7.    *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 14.8.    *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (and subject to the consent of the Investor Parties, which shall not be unreasonably withheld) shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and

shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.9.   *Investor Parties' Consent Rights*

To the extent that this Plan requires the form and/or substance of any document to be acceptable to the Investor Parties, or the Investor Parties to consent to the taking of any action hereunder, unless otherwise specifically stated herein, any determination by the Investor Parties as to the acceptability of any such document or any such consent shall be provided in accordance with the Stock Purchase Agreement.

### 14.10.   *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 14.11.   *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors, the Creditors' Committee, the Investor Parties, the Participating Ad Hoc Group, Varana, Telemetry and the members of the Ad Hoc Senior Secured Noteholders Group (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.12.   *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

### 14.13.   *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**14.14.  *Exhibits.***

All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**14.15.  *Notices.***

In order to be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> K-V Pharmaceutical Company
> 16640 Chesterfield Grove, Suite 200
> Chesterfield, MO 63005
> Attn:   Thomas S. McHugh
>              Chief Financial Officer
>
> -and-
>
> Willkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, New York  10019-6099
> Attn:   Paul V. Shalhoub, Esq.
>              Robin Spigel, Esq.
> Telephone:  (212) 728-8000
> Facsimile:  (212) 728-8111
>
> Counsel to the Debtors

**14.16.  *Filing of Additional Documents.***

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**14.17.  *Reservation of Rights.***

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Creditors' Committee, the Investor Parties, Silver Point or the Debtors with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Creditors' Committee, the Investor Parties or the Debtors with respect to any Claims or Interests prior to the Effective Date.

Dated: July 17, 2013
          St. Louis, Missouri

                              Respectfully submitted,

                              K-V PHARMACEUTICAL COMPANY
                              on behalf of itself and its affiliated Debtors

                              By: /s/ Thomas S. McHugh
                                    Thomas S. McHugh
                                    Chief Financial Officer

Counsel:

WILLKIE FARR & GALLAGHER LLP

Matthew A. Feldman, Esq.
Paul V. Shalhoub, Esq.
Robin Spigel, Esq.
Andrew D. Sorkin, Esq.
787 Seventh Avenue
New York, NY 10019
(212) 728-8000

Counsel for the Debtors and Debtors in Possession

# APPENDIX II

## CONFIRMATION NOTICE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                          :         Chapter 11
                                               :
K-V Discovery Solutions, Inc., et al.,[1]      :         Case No. 12-13346 (ALG)
                                               :
                        Debtors.               :         (Jointly Administered)
-------------------------------------------------------x

**NOTICE OF: (I) ENTRY OF ORDER CONFIRMING SIXTH AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR K-V DISCOVERY
SOLUTIONS, INC. AND ITS AFFILIATED DEBTORS; (II) OCCURRENCE OF
EFFECTIVE DATE; AND (III) DEADLINE FOR FILING FEE CLAIMS,
ADMINISTRATIVE EXPENSE CLIAIMS, AND CLAIMS ARISING FROM
<u>REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES</u>**

**PLEASE TAKE NOTICE THAT:**

1.      <u>Confirmation of the Plan</u>.  On August [__], 2013, the United States Bankruptcy Court
for the Southern District of New York entered an order (the "**Confirmation Order**") confirming the
Sixth Amended Joint Chapter 11 Plan of Reorganization for K-V Discovery Solutions, Inc. and Its
Affiliated Debtors, dated July 19, 2013 (as confirmed, the "**Plan**").  To obtain a copy of the
Confirmation Order or the Plan, you may (a) visit the website of the Debtors' balloting agent, Epiq
Bankruptcy Solutions, LLC ("**Epiq**") at http://dm.epiq11.com/KVD, (b) contact Epiq by calling
[_____], or (c) visit the Bankruptcy Court's website: www.nysb.uscourts.gov (a PACER
password is required).  In addition, copies of the Plan and Confirmation Order are on file with the
Clerk of the Bankruptcy Court, One Bowling Green, New York, New York 10004.  Capitalized terms
used but not defined herein have the meanings given them in the Plan.

2.      <u>Effective Date</u>.  On [_____], 2013, the "Effective Date" occurred with respect to the
Plan.

3.      <u>Bar Date for Filing Administrative Expense Claims</u>.  Pursuant to section 3.2 of the Plan
and paragraph 26 of the Confirmation Order (and except as otherwise provided therein), any Person
asserting an Administrative Expense Claim relating to the period **August 4, 2012 through [_____],
2013**, other than the holder of (a) a DIP Claim, (b) a Fee Claim, (c) a 503(b)(9) Claim, (d) an
Administrative Expense Claim that has been Allowed on or before the Effective Date, (e) an
Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of
business by a Debtor, (f) an Administrative Expense Claim on account of fees and expenses incurred on
or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of
the Bankruptcy Court, (g) an Administrative Expense Claim held by a current officer, director or

---

[1]      The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) K-V
Discovery Solutions, Inc. (7982); (ii) DrugTech Corporation (3690); (iii) FP1096, Inc. (3119); (iv) K-V
Generic Pharmaceuticals, Inc. (7844); (v) K-V Pharmaceutical Company (8919); (vi) K-V Solutions USA,
Inc. (4772); (vii) Ther-Rx Corporation (3624); and (viii) Zeratech Technologies USA, Inc. (6911).  The
Debtors' executive headquarters are located at 16640 Chesterfield Grove, Suite 200, Chesterfield, MO
63005.

employee of the Debtors for indemnification, contribution, or advancement of expenses pursuant to (i) any Debtor's certificate of incorporation, by-laws, or similar organizational document, or (ii) any indemnification or contribution agreement approved by the Bankruptcy Court, (h) an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses, (i) a Senior Secured Notes Indenture Trustee Claim, (j) a Convertible Subordinated Notes Indenture Trustee Claim, or (k) a Cash Collateral Expense Claim, must file with the Bankruptcy Court and serve on the Reorganized Debtors, Epiq and the Office of the United States Trustee, proof of such Administrative Expense Claim so as to be received by **5:00 p.m. (prevailing Eastern time) no later than** [thirty (30) days after the Effective Date], 2013. Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim, and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM (OTHER THAN AS SET FORTH IN SECTION 3.2 OF THE PLAN, INCLUDING HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS FOR AN EXPENSE OR LIABILITY INCURRED AND PAYABLE IN THE ORDINARY COURSE OF BUSINESS) TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

4.    _Rejection Damage Claims_.  Pursuant to Section 10.2 of the Plan and Paragraph 15 of the Confirmation Order, proof of any Claim arising out of the rejection of an executory contract or unexpired lease that was not identified on the Schedule of Assumed Contracts and Leases and was not previously rejected by the Debtors prior to the Effective Date ("**Rejection Claims**") must be filed with the Bankruptcy Court and served on the Reorganized Debtors, Epiq and the Office of the United States Trustee on or before [thirty (30) days after the Effective Date], 2013, except to the extent the rejection of the applicable contract or lease is effective as of a date later than the Effective Date, in which case proof of any Rejection Claim associated with such contract or lease must be filed no later than thirty (30) days after the effective date of such rejection. **HOLDERS OF ANY REJECTION CLAIMS NOT FILED PRIOR TO THE APPLICABLE DEADLINE ARE FOREVER BARRED FROM RECEIVING A DISTRIBUTION FROM THE DEBTORS, THE REORGANIZED DEBTORS OR THE ESTATES ON ACCOUNT OF SUCH CLAIMS.**

[*Remainder of page intentionally left blank*]

5.        <u>Bar Date for Filing Fee Claims</u>.  Pursuant to Section 3.3 of the Plan and paragraph 27 of the Confirmation Order, any Professional Person seeking allowance by the Bankruptcy Court of a Fee Claim shall file with the Bankruptcy Court and serve notice of same on the Reorganized Debtors, Epiq, the Creditors' Committee and the Office of the United States Trustee its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date no later than [forty-five (45) calendar days after the Effective Date], 2013.  **FAILURE TO FILE AND SERVE SUCH FEE APPLICATION TIMELY AND PROPERLY COULD RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED.  Objections to such Fee Claims, if any, must be filed and served on the applicable Professional Person, the Reorganized Debtors, Epiq, the Creditors' Committee and the Office of the United States Trustee by no later than [65 calendar days after the Effective Date], 2013.**

Dated:  New York, New York
           [_____], 2013

                                        WILLKIE FARR & GALLAGHER LLP
                                        Counsel for Reorganized Debtors
                                        787 Seventh Avenue
                                        New York, NY 10019

# EXHIBIT B

**Blackline**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| K-V Discovery Solutions, Inc., et al.,[1] | : | Case No. 12-13346 (ALG) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

## ORDER CONFIRMING SIXTH AMENDED JOINT
## CHAPTER 11 PLAN OF REORGANIZATION FOR
## K-V DISCOVERY SOLUTIONS, INC. AND ITS AFFILIATED DEBTORS

Upon the Sixth Amended Joint Chapter 11 Plan of Reorganization for K-V

Discovery Solutions and Its Affiliated Debtors, dated July 17, 2013 [Docket No. 1002] (as

modified from time to time, including the Plan Supplement, the "**Plan**");[2] and upon the

Disclosure Statement for Sixth Amended Joint Chapter 11 Plan of Reorganization for K-V

Discovery Solutions and Its Affiliated Debtors, dated July 17, 2013 [Docket No. 1003] (the

"**Disclosure Statement**"); and upon the July 16, 2013 hearing to approve the Disclosure

Statement (the "**Disclosure Statement Hearing**"); and upon that certain Order: (I) Approving

Disclosure Statement; (II) Establishing Date of Confirmation Hearing; (III) Establishing

Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A)

Approving Form and Manner of Solicitation Packages, (B) Approving Form and Manner of

Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for

Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline

for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (IV) Establishing

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) K-V
       Discovery Solutions, Inc. (7982); (ii) DrugTech Corporation (3690); (iii) FP1096, Inc. (3119); (iv) K-V
       Generic Pharmaceuticals, Inc. (7844); (v) K-V Pharmaceutical Company (8919); (vi) K-V Solutions USA,
       Inc. (4772); (vii) Ther-Rx Corporation (3624); and (viii) Zeratech Technologies USA, Inc. (6911).  The
       Debtors' executive headquarters are located at 16640 Chesterfield Grove, Suite 200, Chesterfield, MO
       63005.

[2]    Capitalized terms used but not defined herein have the meanings assigned them in the Plan.  The rules of
       interpretation set forth in Article I.B of the Plan shall apply to this Order.

Deadline and Procedures for Filing Objections to Confirmation of Plan; (V) Approving Rights

Offering Procedures; and (VI) Granting Related Relief [Docket No. 995], entered on July 17,

2013 (the "**Disclosure Statement Order**"); and upon the declarations, certifications and related

supplements of Jane Sullivan of Epiq Bankruptcy Solutions, LLC, Thomas S. McHugh,

Treasurer and Vice President or Chief Financial Officer of the Debtors, and Leon Szlezinger of

Jefferies LLC, the Debtors' investment banker and financial advisor; and upon the (i) affidavits,

declarations and exhibits admitted into evidence at the hearing commenced on August 28, 2013,

to consider confirmation of the Plan (the "**Confirmation Hearing**"), (ii) arguments of counsel

presented at the Confirmation Hearing, (iii) objections filed with respect to confirmation of the

Plan by the Public Pension Fund Group, as lead plaintiff in the PPFG Securities Litigation

[Docket No. 1056] and certain member companies of American International Group, Inc.

[Docket No. 1057], and the reservation of rights filed by Lori Anderson, as lead plaintiff in the

2011 Securities Litigation [Docket No. 1055] (collectively, the "**Objections**") and other informal

comments received by the Debtors, (iv) the Debtors' memorandum of law filed in support of

confirmation and in reply to the Objections, and (v) other pleadings filed in support of

confirmation of the Plan; and upon the Court having taken judicial notice of the docket of the

Debtors' Reorganization Cases maintained by the Clerk of the Court and/or its duly appointed

agent, and all pleadings and other documents filed, all orders entered, and evidence and

arguments made, proffered or adduced at, and the hearings held before the Court during the

pendency of these Reorganization Cases, including the Order Setting Bar Dates to File Proofs of

Claim [Docket No. 288], entered on October 19, 2012; and the Court having found that due and

proper notice has been given with respect to the Confirmation Hearing and the deadlines and

procedures for filing objections to the Plan; and the appearance of all interested parties having

been duly noted in the record of the Confirmation Hearing; and upon the record of the

Confirmation Hearing and these Reorganization Cases, and after due deliberation thereon, and

sufficient cause appearing therefor;

## IT IS HEREBY FOUND THAT:

### JURISDICTION AND VENUE

A.    The Court has jurisdiction over this matter and these Reorganization Cases

pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409.

B.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §

157(b), and this Court has exclusive jurisdiction to determine whether the Plan should be

confirmed under the applicable provisions of chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**").

C.    Each of the conditions precedent to the entry of this Order has been

satisfied in accordance with Section 11.1 of the Plan or properly waived in accordance with

Section 11.3 of the Plan.

### STANDARDS FOR CONFIRMATION
### UNDER SECTION 1129 OF THE BANKRUPTCY CODE

D.    Section 1129(a)(1).  The Plan complies with each applicable provision of

the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122

and 1123 of the Bankruptcy Code as follows:

1.    In accordance with section 1122(a) of the Bankruptcy Code,
Section 4.1 of the Plan classifies each Claim against and Interest in
the Debtors into a Class containing only substantially similar
Claims or Interests;

2.    In accordance with section 1123(a)(1) of the Bankruptcy Code,
Section 4.1 of the Plan properly classifies all Claims and Interests
that require classification;

3. In accordance with section 1123(a)(2) of the Bankruptcy Code, Section 4.2 of the Plan properly specifies each Class of Claims that is not impaired under the Plan;

4. In accordance with section 1123(a)(3) of the Bankruptcy Code, Sections 5.3 through 5.10 of the Plan properly specify the treatment of each Class of Claims or Interests that is impaired under the Plan;

5. In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

6. In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including the provisions regarding Effective Date transactions and transfers, the post-Effective Date corporate management, governance and actions set forth in Article VII of the Plan, and the funding for the Plan, including from the proceeds of the Rights Offering and the proceeds from the sale of the Direct Purchase Shares;

7. In accordance with section 1123(a)(6) of the Bankruptcy Code, Reorganized KV's amended certificate of incorporation contains provisions prohibiting the issuance of non-voting equity securities and providing for the appropriate distribution of voting power among all classes of equity securities authorized for issuance;

8. In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan and the Reorganized Debtors' amended certificates of incorporation and bylaws regarding the manner of selection of officers and directors of the Reorganized Debtors, including the provisions of Section 7.5 of the Plan, are consistent with the interests of creditors and equity security holders and with public policy;

9. In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

10. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the assumption or rejection of the Debtors' executory contracts and unexpired leases that have not been previously assumed or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court;

11. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Plan incorporates the settlement or adjustment of claims or

interests belonging to the Debtors and their estates.  The Plan incorporates several settlements by and among one or more of the Debtors and one or more third parties, including, (i) the Stipulation of Settlement and Dismissal (as defined below), and (ii) the global settlement among the Debtors, the Creditors' Committee, the holders of approximately 99% in dollar amount of the Class 3 Senior Secured Notes Claims, and the holders of approximately 97% in dollar amount of Class 6 Convertible Subordinated Notes Claims.  In accordance with Bankruptcy Rule 9019, such settlements are fair and equitable and in the best interests of the Debtors and creditors;

12.  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 12.11 of the Plan provides that the Reorganized Debtors will retain and may enforce any claims, demands, rights, defenses and causes of action that any Debtor may hold against any entity, to the extent not expressly released under the Plan;

13.  In accordance with section 1123(b)(5) of the Bankruptcy Code, Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in each Class;

14.  In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

15.  In accordance with section 1123(d) of the Bankruptcy Code, Section 10.3 of the Plan provides for the satisfaction of Claims related to Cure Amounts associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All Claims related to Cure Amounts will be determined in accordance with the underlying agreements and applicable law.

E.  Section 1129(a)(2).  The Debtors have complied with all applicable

provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or

rejections thereof.  In particular, the Plan complies with the requirements of sections 1125 and

1126 of the Bankruptcy Code as follows:

1.  All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code,

the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York (collectively, the "**Bankruptcy Rules**"), and have had an opportunity to appear and be heard with respect thereto.

2.    The Debtors, the Creditors' Committee, and the Investor Parties, and their respective representatives, solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.  Accordingly, the Debtors, the Creditors' Committee, and the Investor Parties, and their respective representatives, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.  Pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Creditors' Committee, the Investor Parties, the Participating Ad Hoc Group, Varana, Telemetry and the members of the Ad Hoc Senior Secured Noteholders Group (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under the Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

3.    Written notice of the Confirmation Hearing and the relevant deadlines for the submission of ballots and objections to confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the Disclosure Statement Order.  Such written notice is adequate and sufficient.

4.    Claims in Classes 1 and 2 under the Plan are unimpaired, and such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.    All Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order were given the opportunity to vote on the Plan (i.e., Classes 3, 4, 5, 6 and 7).  Ballots were received from holders of Claims in all such Classes, except for Class 4 (with respect to KV), and Class 7 (with respect to K-V Generic Pharmaceuticals, Inc.) (such Classes, collectively, the "**Deemed Accepting**

**Classes**"), which Classes are deemed to accept the Plan pursuant to paragraph 18(j) of the Disclosure Statement Order.

6.      The Debtors have made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 3, 4, 5, 6 and 7 under the Plan.  No holder of Claims in the Deemed Accepting Classes returned a Ballot accepting or rejecting the Plan.

7.      Each of Classes 3, 5, 6 and 7 having holders of Claims entitled to vote on the Plan (except with respect to General Unsecured Claims against KV) have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in such Classes. actually voting.  In accordance with paragraph 18(j) of the Disclosure Statement Order, as no holder of Claims in the Deemed Accepting Classes voted to accept or reject the Plan, such Classes are deemed to have accepted the Plan.

F.      Section 1129(a)(3).  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances in these Reorganization Cases.  The Plan is the result of extensive, good faith, arm's length negotiations between the Debtors and certain of their principal constituencies (including holders of approximately 99% of the principal amount of the Senior Secured Notes Claims and holders of approximately 97% of the principal amount of Convertible Subordinated Notes Claims, the Creditors' Committee, and each of their respective representatives), reflects substantial input from the principal constituencies having an interest in these cases, and achieves the goal of consensual reorganization contemplated by the Bankruptcy Code.

G.      Section 1129(a)(4).  Any payment made or to be made by the Debtors for services or for costs and expenses in, or in connection with, the Reorganization Cases, or in connection with the Plan and incident to the Reorganization Cases, has been approved by, or is subject to the approval of, this Court as reasonable, satisfying the requirements of section 1129(a)(4) of the Bankruptcy Code.  Pursuant to Section 3.23.3 of the Plan, and except as

- 7 -

otherwise provided herein, all payments to be made to Professional Persons or other entities

asserting a Fee Claim for services rendered before the Effective Date will be subject to review

and approval by this Court.

H.      Section 1129(a)(5).  To the extent known, the Debtors have disclosed the

identity and affiliations of the individuals proposed to serve, after confirmation of the Plan, as

directors and officers of the Reorganized Debtors; the appointment to, or continuance in, such

offices of such individuals is consistent with the interests of the Debtors' creditors and interest

holders and with public policy; and the Debtors have disclosed the identity of any insiders who

will be employed or retained by the Reorganized Debtors subsequent to confirmation of the Plan

and the nature of any compensation to be paid to such insiders.  These disclosures satisfy the

requirements of section 1129(a)(5) of the Bankruptcy Code.

I.      Section 1129(a)(6).  The Plan does not provide for any changes in rates

that require regulatory approval of any governmental agency.

J.      Section 1129(a)(7).  Each holder of an impaired Claim or Interest in each

impaired Class of Claims or Interests that has not accepted the Plan will, on account of such

Claim or Interest, receive or retain property under the Plan having a value, as of the Effective

Date, that is not less than the amount that such holder would have received or retained if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  See

Disclosure Statement, Exhibit 2.

K.      Section 1129(a)(8).  With respect to each Class of Claims or Interests

designated by the Plan, other than (i) Classes that do not have a holder of an Allowed Claim or

Allowed Interest and are deemed eliminated from the Plan for the purposes of section 1129(a)(8)

of the Bankruptcy Code pursuant to paragraph 19 of the Disclosure Statement Order, and (ii)

Classes 7 (solely with respect to General Unsecured Claims against KV), 8(a) (Existing

Securities Law Claims), 8(b) (Equitably Subordinated Claims) and 9 (Existing KV Interests)

either:  (a) such Class has accepted the Plan; or (b) such Class is not Impaired under the Plan.

Holders of General Unsecured Claims against KV in Class 7 have rejected the Plan because the

Plan was not accepted by the holders of at least two-thirds in amount of such Claims.  The

holders of Claims in Classes 8(a), 8(b) and 9 are deemed to have rejected the Plan pursuant to

section 1126(g) of the Bankruptcy Code.  Nevertheless, the Plan is confirmable because it

satisfies section 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting Classes

of Claims and Interests.

    L. <u>Section 1129(a)(9)</u>.  Except to the extent that the holder of a particular

Claim has agreed to different treatment, the Plan provides treatment for Administrative Expense

Claims, Priority Tax Claims, Fee Claims and Priority Non-Tax Claims that is consistent with the

requirements of section 1129(a)(9) of the Bankruptcy Code.

    M. <u>Section 1129(a)(10)</u>.  The Plan has been accepted by Classes 3, 5, 6, and 7

(except with respect to General Unsecured Claims against KV), which are all Classes of impaired

Claims that are entitled to vote on the Plan, determined without including any acceptance of the

Plan by any insider.  In accordance with paragraph 18(j) of the Disclosure Statement Order, as no

holder of Claims in Class 4 voted to accept or reject the Plan, such Class is deemed to have

accepted the Plan.

    N. <u>Section 1129(a)(11)</u>.  The Debtors' projections of financial information of

the Reorganized Debtors as of the Effective Date are reasonable and made in good faith, and

confirmation of the Plan is not likely to be followed by the liquidation or the need for the further

financial reorganization of the Debtors.

O.      Section 1129(a)(12).  The Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, due and payable through the Effective Date shall be paid by the Debtors on or before the Effective Date and amounts due thereafter shall be paid by the Reorganized Debtors in the ordinary course until the entry of a final decree closing the Reorganization Cases, or the conversion or dismissal of the Reorganization Cases.

P.      Section 1129(a)(13).  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtor had obligated itself to provide such benefits.

Q.      Sections 1129(a)(14), 1129(a)(15) and 1129 (a)(16).  Sections 1129(a)(14), 1129(a)15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Reorganization Cases.

R.      Section 1129(b).  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 7 (with respect to General Unsecured Claims against KV), 8(a), 8(b) and 9, i.e., the Classes that are impaired and rejected (or are deemed to reject) the Plan. The Plan does not discriminate unfairly with respect to Class 7 (with respect to General Unsecured Claims against KV) because the holders of General Unsecured Claims against KV are receiving the same or more favorable treatment as holders of all similarly situated unsecured Claims against KV.

S.      The Plan does not discriminate unfairly with respect to Classes 8(a), 8(b) or 9 because the Claims and Interests in such Classes either are subordinated to other Claims or

- 10 -

have no value.  The Plan is "fair and equitable" with respect to each rejecting Class because no

Class senior to each such rejecting Class is being paid more than in full and the Plan does not

provide a recovery on account of any Claim or Interest that is junior to Classes 7, 8(a), 8(b) or 9.

        T.     Section 1129(c).  The Plan is the only plan that has been filed in these

cases that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of

the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code

have been satisfied.

        U.     Section 1129(d).  No party in interest, including any governmental unit (as

defined in section 101(27) of the Bankruptcy Code), has requested that the Court deny

confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of

taxes or the avoidance of the application of section 5 of the Securities Act of 1933; the principal

purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of

section 1129(d) of the Bankruptcy Code.

## DISCHARGE, INDEMNIFICATION, INJUNCTIONS, RELEASES AND EXCULPATION

        V.     The indemnification, injunction, discharge, release and exculpation

provisions set forth in Article XII of the Plan constitute good faith compromises and settlements

of the matters covered thereby.  Such compromises and settlements are made in exchange for

consideration and are in the best interests of the Debtors and their Estates, are fair, equitable,

reasonable, and are integral elements of the restructuring and resolution of the Reorganization

Cases in accordance with the Plan.  The failure to effect the discharge, release, indemnification,

injunction and exculpation provisions described in Article XII of the Plan would seriously impair

the Debtors' ability to confirm the Plan.  Each of the discharge, release, indemnification,

injunction and exculpation provisions set forth in the Plan:

(i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b) and (d);

(ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

(iii) is an integral element of the settlements and transactions incorporated into the Plan;

(iv) confers material benefit on, and is in the best interests of, the Debtors and their estates;

(v) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Reorganization Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and

(vi) is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and applicable law.

W. **Termination of Subordination Rights and Settlement of Related Claims.**

Except as provided in the Plan, the classification of and manner of all Claims and Interests and the respective distributions, treatments and other provisions under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(a) and 510(b) of the Bankruptcy Code and any and all such rights are settled, compromised and released pursuant to the Plan.

**HERMELIN CLAIMS**

X. As a result of the withdrawal of the proof of claim filed by Mr. Marc S. Hermelin, assigned claim number 151 by the Debtors' claims agent, there are no claims in Class 8(b) (Equitably Subordinated Claims).

**NOW, THEREFORE, IT IS HEREBY ORDERED,
ADJUDGED AND DECREED, that:**

1. The findings of this Court as set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter by virtue of Bankruptcy Rule 9014.  To the extent any findings of fact constitute conclusions of law,

they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they
are adopted as such.

2.    The Plan is confirmed pursuant to section 1129 of the Bankruptcy Code;
provided, however, that if there is any conflict between the terms of the Plan and the terms of this
Order, the terms of this Order shall control.

3.    The Effective Date of the Plan shall occur on the first Business Day on
which all conditions set forth in Section 11.2 of the Plan have been satisfied or waived in
accordance with Section 11.3 of the Plan.

4.    Any objections or responses to confirmation of the Plan and any
reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior
to the entry of this Order or (b) are not cured by the relief granted herein, are overruled in their
entirety and on their merits, and all withdrawn objections or responses are deemed withdrawn
with prejudice.

5.    The business and assets of the Debtors shall remain subject to the
jurisdiction of this Court until the Effective Date.

6.    On and after the Effective Date, the Reorganized Debtors may operate
their businesses and may use, acquire and dispose of property and prosecute, compromise or
settle any Claims (including any Administrative Expense Claims) and Causes of Action without
supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the
Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan
or this Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that
they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses
or related support services without application to the Bankruptcy Court.

7.      The Plan provides for the comprehensive settlement of Claims and controversies against the Debtors, including the settlement of the ETHEX Criminal Fine Claims and the Qui Tam Claims.  The negotiations of such settlements were conducted in good faith and at arms' length, and each such settlement is of benefit to the Debtors' estates and represents a fair, necessary and reasonable compromise of the Claims held by the holders thereof.  The terms and conditions of each such compromise and settlement are therefore an integral part of the Plan.  Further, the settlements represent a compromise between and among the Debtors and their creditors of all claims against, interests in, and litigation pending or threatened against the Debtors, or that was or could have been commenced against the Debtors prior to the date of entry of this Order.  The settlements, as reflected in the relative distributions and recoveries of holders of Claims and Interests under the Plan, are fair and reasonable and accordingly are approved pursuant to Bankruptcy Rule 9019(a).  The Settlements will save the Debtors and their estate the costs and expenses of prosecuting various disputes, the outcome of which would likely consume substantial resources of the Debtors' estates and require substantial time to adjudicate.  The settlements also have facilitated the creation and implementation of the Plan and benefit the estates and the Debtors' creditors.

## A.      Plan Implementation

1.      In accordance with section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other state (collectively, the "**Reorganization Effectuation Statutes**"), but subject to the satisfaction or waiver of all conditions precedent listed in Section 11.2 of the Plan (unless waived in accordance with section 11.3 of the Plan), without further action by the Court or the boards of directors or managers or security holders of any Debtor or Reorganized Debtor, the Debtors and the Reorganized Debtors are authorized to:  (a) take any and all actions

necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby, including those transactions identified in Article VII of the Plan; and (b) execute, deliver, file and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

2.       This Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

3.       Each federal, state, commonwealth, local, foreign or other governmental agency is hereby directed and authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

4.       The consummation of the Plan, including the assumption of any executory contract or unexpired lease by a Reorganized Debtor, shall not constitute a change in ownership or change in control under any employee benefit plan or program, financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

**B.       Executory Contracts and Unexpired Leases**

5.       Subject to the occurrence of the Effective Date, the Debtors are authorized to assume and/or reject executory contracts or unexpired leases in accordance with Article X of the Plan and orders of this Court.  Each executory contract and unexpired lease assumed pursuant to Section 10.1 of the Plan shall revest in and be fully enforceable by the applicable Reorganized

Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any

order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal

law.

6.      As of and subject to the occurrence of the Effective Date and the payment

of any applicable Cure Amount, all executory contracts and unexpired leases identified on the

Schedule of Assumed Contracts and Leases shall be deemed assumed, and all other executory

contracts and unexpired leases of the Debtors shall be deemed rejected, except that: (a) any

executory contracts and unexpired leases that previously have been assumed or rejected pursuant

to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; and (b)

all executory contracts and unexpired leases that are the subject of a separate motion to assume

or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated

as is determined by a Final Order of the Bankruptcy Court resolving such motion.

7.      The amended and restated employment agreements between KV and each

of Gregory J. Divis, Thomas S. McHugh, and Patrick J. Christmas, substantially final forms of

which are annexed to the Plan Supplement as Exhibit 5, shall be deemed assumed by the

Reorganized Debtors upon the occurrence of the Effective Date pursuant to section 10.5 of the

Plan.

8.      All Claims arising from the rejection of executory contracts or unexpired

leases, if any, will be treated as General Unsecured Claims.  In the event that the rejection of an

executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in

damages to the other party or parties to such contract or lease, a Claim for such damages shall be

forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or

their respective properties or interests in property as agents, successors or assigns, unless a proof

of claim is timely filed with the Bankruptcy Court and served upon counsel for the Debtors and

the Reorganized Debtors on or before the date that is thirty (30) days after the effective date of

such rejection (which may be the Effective Date, the date on which the Debtors reject the

applicable contract or lease as provided in Section 10.3(c) of the Plan, or pursuant to an order of

the Bankruptcy Court).  Unless previously provided by the Debtors, the Debtors shall provide

notice, as set forth in the Confirmation Notice (as defined in paragraph 3334 below), of the last

date to file a Claim arising from the rejection of an executory contract or unexpired lease to the

counterparties of such rejected contracts and leases.

**C.      Vesting and Transfer of Assets**

9.      On the Effective Date, except as otherwise provided herein or in the Plan,

all property of the Estates of the Debtors, including all claims, rights and Causes of Action and

any property acquired by the Debtors under or in connection with the Plan, shall vest in each

respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances

and Interests.

**D.      No Relinquishment of Rights**

10.      Except as provided in sections 12.7 and 14.5 of the Plan, nothing

contained in the Plan or this Order shall be deemed to be a relinquishment of any rights, claims,

or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had

immediately prior to the Effective Date on behalf of the estates or of themselves in accordance

with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, and the

Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes

of Action, rights of setoff, or other legal or equitable defenses as fully as if the Reorganization

Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting

any Claim left unimpaired by the Plan may be asserted to the same extent as if the

Reorganization Cases had not been commenced.

**E.      Approval of Injunction, Release and Exculpation Provisions**

11.      The injunction, release and exculpation provisions contained in the Plan,

including those set forth in Article XII of the Plan, are expressly incorporated into this Order as if

set forth in full herein and are authorized and approved.

**F.      Hermelin Claims**

12.      The Hermelin Claims are withdrawn, with prejudice.  Mr. Marc S.

Hermelin shall be forever barred from asserting or pursuing any Claims against the Debtors, their

estates or the Reorganized Debtors for any and all acts or omissions, transactions, events or other

occurrences taking place on or prior to the Effective Date, and his right, if any, to seek to lift the

automatic stay pursuant to section 362 of the Bankruptcy Code or modify the injunction set forth

in the Plan to assert any Claims are waived.

**G.      ~~F.~~ Settlement of ETHEX Criminal Fine Claims and Qui Tam Claims**

13.      ~~19.~~ The settlement of the ETHEX Criminal Fine Claims and the Qui Tam

Claims as and to the extent set forth in the Stipulation of Settlement and Dismissal (the

"**Stipulation of Settlement and Dismissal**"), filed in Adv. Proc. No. 12-02005 (ALG), is

approved.  The Debtors are authorized to take such further actions and execute and deliver such

further documents as may be reasonably necessary to effectuate the Stipulation of Settlement and

Dismissal.

14.      ~~20.~~ Notwithstanding anything contained in the Stipulation of Settlement

and Dismissal or anything to the contrary contained herein or in the Plan, the discharge, release

and injunction of the Plan, as approved by this Order, shall apply to the United States of

America, and each of its agencies, departments, and agents; provided, nothing in the Plan or this

Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or

Reorganized Debtors are entitled to under the Bankruptcy Code or applicable law, if any.  The

discharge, release and injunction provisions contained in the Plan and this Order are not intended

and shall not be construed to bar the United States from, subsequent to this Order, pursuing any

police or regulatory action.  Accordingly, notwithstanding anything contained in the Plan or this

Order to the contrary, nothing in the Plan or this Order shall discharge, release, impair or

otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning

of section 101(5) of the Bankruptcy Code; (2) any claim of the United States arising on or after

the Confirmation Date; (3) any valid right of setoff or recoupment of the United States against

any of the Debtors; or (4) any liability of the Debtors or Reorganized Debtors under

environmental law to any Governmental Unit (as defined by section 101(27) of the Bankruptcy

Code) as the owner or operator of property that such entity owns or operates after the

Confirmation Date (as defined in the Plan).  Nor shall anything in the Confirmation Order or the

Plan:  (i) enjoin or otherwise bar the United States or any governmental unit from asserting or

enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii)

subject to paragraph 11 of the Stipulation of Settlement and Dismissal, divest any court,

commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United

States or any governmental unit are discharged or otherwise barred by this Order, the Plan, or the

Bankruptcy Code.  Moreover, except as otherwise agreed in the Stipulation of Settlement and

Dismissal, nothing in this Order or the Plan shall release any non-debtor, including any

non-debtor Released Parties (as defined in the Plan), from any liability to the United States,

including but not limited to any liabilities arising under the Internal Revenue Code, the

environmental laws, or the criminal laws against the non-debtor Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the non-debtor Released Parties for any liability whatsoever; provided, however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

**H.**     ~~G.~~ **Order Binding on All Parties**

15.     ~~21.~~ Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Order shall be binding upon, and inure to the benefit of the Debtors, all holders of Claims and Interests, and their respective successors and assigns.

**I.**     ~~H.~~ **Approval of Discharge of Claims and Termination of Interests**

16.     ~~22.~~ The discharge provision as set forth in Section 12.3 of the Plan is approved, is so ordered and shall be immediately effective on the Effective Date without further order or action on the part of the Court or any other party.

17.     ~~23.~~ Except as specifically set forth in the Plan or herein, as of the Effective Date, each Person that is a holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in the Plan, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined,

pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting

any such discharged Claim against or terminated Interest in any Debtor or Reorganized Debtor.

**J.**    ~~I.~~ **Exemption From Securities Laws**

18.    ~~24.~~ The offering, issuance of and the distribution under the Plan and

associated documents and any and all agreements incorporated therein of the New Common

Stock Securities, including the Subscription Rights, the Rights Offering Stock, the Direct

Purchase Shares, the Commitment Fee Shares, and the Convertible Subordinated Notes Equity

Distribution, shall be exempt from the registration requirements of section 5 of the Securities Act

pursuant to section 1145 of the Bankruptcy Code and/or Section 4(a)(2) of the Securities Act and

Regulation D promulgated thereunder, to the maximum extent permitted thereunder.  Subject to

any transfer restrictions contained in the Certificate of Incorporation of Reorganized KV and/or

the New Stockholders Agreement, the New Common Stock issued on account of the Convertible

Subordinated Notes Equity Distribution may be resold by the holders thereof without restriction,

except to the extent that any such holder is deemed to be an "underwriter" as defined in section

2(a)(11) of the Securities Act and referred to in section 1145(b)(1) of the Bankruptcy Code, and

in compliance with any applicable state or foreign securities laws, if any, applicable at the time of

any future transfer of such securities.  Certain of the New Common Stock Securities other than

the Convertible Subordinated Notes Equity Distribution, including the Subscription Rights, the

Rights Offering Stock, the Direct Purchase Shares and the Commitment Fee Shares, constitute

"restricted securities" within the meaning of Rule 144 under the Securities Act and accordingly

may not be offered, sold, resold, pledged, delivered, allotted or otherwise transferred absent an

effective registration statement for such securities except in transactions that are exempt from, or

in transactions not subject to, the registration and prospectus delivery requirements of the

Securities Act and in compliance with any applicable state or foreign securities laws applicable at the time of any future transfer of such securities.

**K.    J. Exemption From Certain Transfer Taxes**

19.    25. To the fullest extent permitted by applicable law, all sale transactions and asset transfers by the Debtors or Reorganized Debtors, as applicable, approved by the Bankruptcy Court on or after the Confirmation Date through and including the Effective Date, including the transfers effectuated under the Plan, shall constitute "transfers under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**L.    K. Administrative Bar Date**

20.    26. Except as otherwise provided in Section 3.2 of the Plan or in an order of this Court, unless previously filed, a holder of an Administrative Expense Claim must file with the Bankruptcy Court and serve on the Debtors or Reorganized Debtors (as the case may be), the Claims Agent and the Office of the United States Trustee (the "**Notice Parties**"), proof of such Administrative Expense Claim within thirty (30) days after the Effective Date.  Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  Failure to file and serve such proof of Administrative Expense Claim timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.  Unless previously provided

by the Debtors, the Debtors shall provide notice of the last date to file an Administrative Expense

Claim in the Confirmation Notice.

**M.**    ~~L.~~ **Fee Claims**

21.    ~~27.~~ Any Professional Person seeking allowance by the Bankruptcy Court

of a Fee Claim shall file with the Bankruptcy Court and serve notice of same on the Reorganized

Debtors, Epiq, the Creditors' Committee and the Office of the United States Trustee its

respective final application for allowance of compensation for services rendered and

reimbursement of expenses incurred prior to the Effective Date no later than forty-five (45)

calendar days after the Effective Date.  Objections to such Fee Claims, if any, must be filed and

served on the applicable Professional Person, the Reorganized Debtors, Epiq, the Creditors'

Committee and the Office of the United States Trustee by no later than sixty-five (65) calendar

days after the Effective Date or such other date as established by the Bankruptcy Court.

**N.**    ~~M.~~ **Cancellation of Existing Securities and Agreements**

22.    ~~28.~~ Except for the purpose of evidencing a right to distribution under the

Plan, and except as otherwise set forth herein or in the Plan (including in Section 7.3 of the Plan),

on the Effective Date all agreements, instruments, and other documents evidencing any Claim or

Interest, other than Intercompany Interests, and any rights of any holder in respect thereof, shall

be deemed cancelled, discharged and of no force or effect.

**O.**    ~~N.~~ **Stay of Confirmation Order Waived**

23.    ~~29.~~ For good cause shown, the provisions of Bankruptcy Rule 3020(e)

shall not apply to this Order and the Debtors are authorized to consummate the Plan immediately

upon entry of this Order.  The period in which an appeal with respect to this Order must be filed

shall commence immediately upon the entry of this Order.

**P.** ~~O.~~ **Binding Effect of Prior Orders**

24. ~~30.~~ Pursuant to section 1141 of the Bankruptcy Code, effective as of and subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Reorganization Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date that ultimately are granted shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and their respective successors and assigns.

25. ~~31.~~ Notwithstanding anything to the contrary herein or in the Plan, nothing in the Plan or this Order shall limit or otherwise affect the Debtors' obligations under that certain Settlement Agreement and Release dated October 18, 2012, by and among Zydus Pharmaceuticals (USA), Inc. and Nesher Pharmaceuticals (USA) LLC, on the one hand, and K-V Pharmaceutical Company, K-V Generic Pharmaceuticals, Inc. and DrugTech Corporation, on the other hand (as amended, modified, and/or supplemented, the "**Nesher Settlement Agreement**"), which was approved by the Court by order dated November 16, 2012 [Docket No. 383], and the provisions of the Nesher Settlement Agreement, including the rights and obligations of the parties thereunder, shall survive the Effective Date.

26. ~~32.~~ The provisions of the Protective Orders (as defined in the Disclosure Statement) survive the Effective Date as and to the extent set forth therein and, notwithstanding anything to the contrary contained herein or the Plan, the rights and obligations of the parties thereto for any breach thereof also shall survive the Effective Date.  Further, notwithstanding entry of this Order by the Bankruptcy Court and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Stipulated Order Pursuant to Bankruptcy Rule

2004 Authorizing the Examination of PharMerica Corp. [Docket No. 478] and the Stipulated

Order Pursuant to Bankruptcy Rule 2004 Authorizing the Examination of Alere Women's and

Children's Health, LLC [Docket No. 476], including, resolving matters relating to compliance by

Pharmerica Corp., by Alere Women's and Children's Health, LLC and by the Reorganized

Debtors (or any applicable successor in interest of the Debtors) with each such respective

stipulated order and the Protective Orders, and the Reorganized Debtors, Pharmerica Corp., and

Alere Women's and Children's Health, LLC  shall be entitled to pursue all rights and remedies

set forth in such stipulated orders and the Protective Orders.

**Q.      P. Notice of Confirmation of the Plan**

27.      33. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors

or the Reorganized Debtors are directed to serve a notice of the entry of this Order, substantially

in the form of Appendix II attached hereto (the "**Confirmation Notice**"), on all parties that they

served with notice of the Confirmation Hearing and parties to executory contracts or unexpired

leases no later than ten (10) days after the Effective Date; provided, however, that the Debtors or

the Reorganized Debtors shall be obligated to serve the Confirmation Notice only on the record

holders of Claims or Interests as of the Confirmation Date.  As soon as practicable after the entry

of this Order, the Debtors shall make copies of this Order and the Confirmation Notice available

on their reorganization website at http://dm.epiq11.com/KVD.

**R.      Q. Miscellaneous Provisions**

28.      34. The Debtors are authorized to further amend or modify the Plan at any

time prior to the substantial consummation of the Plan, but only in accordance with, and subject

to, section 1127 of the Bankruptcy Code and Section 14.5 of the Plan, without further order of

the Court.  In addition, without the need for a further order or authorization of this Court, but

subject to the express provisions of this Order, the Debtors shall be authorized and empowered as may be necessary to make non-material modifications to the documents filed with the Court, including the Plan Supplement or documents forming part of the evidentiary record at the Confirmation Hearing, in their reasonable business judgment, but only in accordance with, and subject to Section 14.5 of the Plan.

29.    35. The Creditors' Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member (including each officer, director, employee or agent thereof) of the Creditors' Committee and each professional retained by the Creditors' Committee shall be released and discharged from all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, its membership on the Creditors' Committee, the Plan or the Reorganization Cases, except with respect to: (i) any matters concerning any Fee Claims held or asserted by any professionals retained by the Creditors' Committee; or (ii) any appeals of this Order, or any appeal relating to the Postpetition Interest Amount, through the date such appeals are finally decided, settled, withdrawn or otherwise resolved.

30.    36. On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute and defend their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Reorganized Debtors shall be responsible for the fees, costs and expenses associated with the prosecution and defense of such Fee Claims.

31.    37. Subject to occurrence of the Effective Date, (i) the Manufacturing Agreement between DPT Laboratories, LTD and K-V Pharmaceutical Company (as amended,

modified and/or supplemented, the "**Manufacturing Agreement**") shall be deemed assumed by

K-V Pharmaceutical Company as of the Effective Date pursuant to section 365 of the Bankruptcy

Code, and (ii) the Cure Amount shall be the sole amount necessary to be paid by KV

Pharmaceutical Company for any claims and obligations existing as of the Petition Date under

the Manufacturing Agreement (provided that, notwithstanding anything contained herein or in

the Plan to the contrary, any indemnity obligations of K-V Pharmaceutical Company that are not

yet known, fixed and/or liquidated as of the date of such assumption shall survive).

32.    38. Notwithstanding anything contained herein or the Plan to the contrary,

the priority to insurance proceeds in favor of Persons that served as a director or officer of the

Debtors at any time on and after the Petition Date provided in section 12.12(b) of the Plan shall

not apply to proceeds (or access to such proceeds) of any insurance policy covering claims

asserted or to be asserted against any defendant in the PPFG Securities Litigation.

33.    39. All insurance policies listed on the that certain schedule agreed to by

and between K-V Pharmaceutical Company and AIG (as defined below) pursuant to letter

agreement, together with any agreements related to such policies (collectively, the "**AIG**

**Policies**") between American Home Assurance Company, National Union Fire Insurance

Company of Pittsburgh, Pa., Insurance Company of the State of Pennsylvania, Lexington

Insurance Company, Commerce & Industry Insurance Company, and Chartis Specialty Insurance

Company, together with any other member companies of American International Group, Inc. that

provided insurance coverage to Debtors (collectively, "**AIG**" or "**AIG Companies**"),

on-the-one-hand, and the Debtors, on-the-other-hand, shall be treated under the Plan as assumed

contracts.  The Cure Amount is $10,335, with the sole recourse for payment of such Cure

Amount as well as any and all valid amounts due and owing by a Debtor limited to the applicable

AIG Company setting off against the applicable Debtor's collateral held by such AIG Company in accordance with the terms of the applicable AIG Policy(ies). No other cure payments are owed as of the Effective Date, and all other rights and obligations of the parties shall survive and the Effective Date and be satisfied after the Effective Date in the ordinary course of business. Notwithstanding anything to the contrary, nothing in the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to or have the effect of, impairing the insurers' legal, equitable or contractual rights, if any, including without limitation, any rights of setoff, recoupment, arbitration or arising from a change of control, if any, in any respect; provided, that notwithstanding the foregoing or anything contained in any of the AIG Policies to the contrary, the AIG Companies shall have no right to terminate coverage or take any actions against any of the debtors in respect of a change of control resulting from the Debtors emergence from these chapter 11 cases. The rights of the parties with respect to such agreements otherwise shall be determined pursuant to the applicable agreements.

34.    Pursuant to paragraph 18 of that certain *Final Cash Collateral Order (1) Authorizing Use of Cash Collateral and Providing for Adequate Protection, (2) Granting Liens and Providing Superpriority Administrative Expense Status, and (3) Modifying the Automatic Stay Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code* [Dkt. No. 144], the Challenge Period (as defined in that certain *Stipulation and Order Extending Committee Challenge Period* [Dkt. No. 1035], dated August 6, 2013 (the "Ninth Stipulation and Order")), for the Creditors' Committee is hereby extended through and including the occurrence of the Effective Date under the Plan solely with respect to the potential challenges or potential causes of action identified in the Ninth Stipulation and Order, and all the respective parties' rights under the Ninth Stipulation and Order are otherwise expressly reserved.

35.   40. Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such related agreements be approved in their entirety.

36.   41. Any document related to the Plan that refers to a plan of reorganization of the Debtors other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a plan of reorganization of the Debtors in such document shall mean the Plan confirmed by this Order, as appropriate.

37.   42. In the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document).  In the event of any inconsistency between the Plan or any agreement, instrument, or document intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of this Order shall govern.

38.   43. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Reorganization Cases after the Effective Date shall be limited to the following parties:  (a) the Reorganized Debtors and their counsel, (b) the United States Trustee, and (c) any party known to be directly affected by the relief sought.

39.   44. If the Plan is revoked or withdrawn pursuant to Section 14.6 of the Plan prior to the Effective Date, the Plan shall be deemed null and void.

40.    45.   Notwithstanding the entry of this Order, from and after the Effective

Date, the Court shall retain such jurisdiction as is legally permissible of the Reorganization

Cases, and all matters arising under, arising out of, or related to, the Reorganization Cases and

the Plan (a) as provided for in Article XIII of the Plan, (b) as provided for in this Order, and (c)

for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

Dated: _____, 2013
       New York, New York


_____
THE HONORABLE ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

## APPENDIX I

### PLAN OF REORGANIZATION

## APPENDIX II

## CONFIRMATION NOTICE